## APPEAL of ALBERT S. CUMMINGS.

1. Since the act of 11th April, 1848, testamentary guardianship of the person, but not of the estate, ceases upon the marriage of the female ward.

2. The application of the husband of such a ward for a decree upon the guardian to transfer her property to him, derives no additional validity from her assent to it, for, being a minor, she is incapable of giving assent.

3. By that act a married woman must hereafter be considered a *feme sole* in regard to any estate, of whatever name or sort, owned by her before marriage, or which shall accrue to her during coverture, by will, descent, deed of conveyance, or otherwise.  The act works a radical change in the condition of *femes covert*.

APPEAL by Albert S. Cummings from the decree of the Orphans' Court of Union.

*July* 27.  Albert S. Cummings, intermarried with Louisa, a daughter of Peter Richter, deceased, presented a petition to the court below, representing " That Henry Hilbish, who is the testamentary guardian of said Louisa, has filed his account, which has been confirmed absolutely at the present term, by which it appears that the balance in his hands is as follows :—

| | |
|---|---|
| Balance in money | $1435.74 |
| A house and lot for which the guardian holds the title papers, amounting to | 1560.00 |
| | $2995.74 |

" The petitioner further represents, that, although the said Louisa is still in her minority, between the ages of fourteen and twenty-one years, he conceives that by the marriage, which has taken place since the death of her father, the relation of guardian and ward has been virtually dissolved, and that he is entitled, in virtue of his marital rights, to assume the care and management of his wife's property, in such a way and manner as shall be most conducive to her interest, and under such restrictions as are provided by the laws of this Commonwealth.  He further represents that the said Louisa is willing and desirous that he should take

charge of her property as aforesaid, as is witnessed by her written consent and acknowledgment herewith presented.

"The petitioner therefore prays the court to make a decree directing the money, and securities for money, and other personal property in the hands of the guardian, to be paid and transferred to him, for the use and benefit of his said wife; and also directing the said guardian to transfer the deeds and other papers relating to the real property to the said Louisa."

In connexion with the above petition was offered the written consent and acknowledgment of the wife, upon which the court endorsed as follows:—

"It being made to appear to the court that Louisa Cummings is a minor, the acknowledgment offered above is refused to be taken."

And on the same day the court refused to make the order requested, and refused to decree the money, &c., to the petitioner.

Mr. Cummings took an appeal, and assigned for error that the court erred in refusing to decree according to the prayer of the petitioners.

*Swineford*, for the appellant.—In case of the marriage of a female infant ward, the duties of her guardian cease, being transferred by operation of law upon her husband: 1 Pa. Black. 249; 1 Ves. 89.

The marriage of a female ward terminates the guardianship, though she be still in her infancy; and her husband may call upon the guardian to settle his accounts and pay him the balance: 1 Whar. Dig. 2d ed. 406, pl. 27.

Testamentary guardianship is not determined by the marriage of a male ward, but the guardianship of females is determined by their marriage: Macpherson on Infants, 90, in L. L. vol. 41; Ves. 91.

Act securing the rights of married women: P. L. 1848, p. 536, § 6.

This act does not conflict with the above authorities. It does not seem to have been the design of the legislature to deprive the husband of the right to reduce into possession, control, and manage the property of the wife for her benefit. The only restraint imposed by the act is on the husband's power to dispose of or encumber it, as expressed in the words, "shall not be subject to levy and execution for the debts or liabilities of her husband, nor shall such property be sold, conveyed, mortgaged, transferred, or in any manner encumbered by the husband, without her written consent," &c.

*Casey*, for the appellee.—The act of 11th April, 1848, is clearly intended to change the whole doctrine of the common law, in regard to the rights of the husband, and the disabilities of the wife. Her property, of every description, shall remain hers, "*as fully after marriage as before.*" This is undoubtedly inconsistent with his right of reducing her *choses in action* into possession. It not only destroys his right to the property, but also his dominion over it. If he may obtain possession, may he not hold it? How can she wrest it from him? Certainly not by action. There is, in every view of the act, a strong and visible line of separation drawn between the property of the husband and that of the wife. The first proviso of the 6th section, that he shall not be liable for her debts, contracted before marriage, strengthens this view of the case; and the 2d proviso of the same act, recognising and conferring, by implication, a right to make valid and binding contracts during coverture, gives additional force to this construction; while the provisions authorizing her to dispose of her estate, *real, personal, and mixed*, by will, and rendering her liable for necessaries to herself and her family, are in my view conclusive, that the legislature not only intended to take away the common-law rights of the husband, but to a very great extent, to confer upon her, so far as her separate property, the legal rights and capacities of a *feme sole*.

If this view of the act be correct, what right has the husband to this fund? He was only the guardian of her estate, at common law, in virtue of his rights as husband, and his dominion over her property; but the act having taken away this right, the incident would of course cease to exist, and the rights and duties of her testamentary guardian would continue, as to the estate, the same as before. When she arrives at age, she may take charge of it herself, or permit her husband to do so; but in the mean time, she being incompetent, and the husband having no right, the functions of the guardian would not cease.

In equity, where the wife has a separate estate settled upon her, the husband cannot get possession of it. This act assimilates the property of the wife to the instance of a *feme covert*, with a separate estate, dispensing with the necessity of trustees, and extending very greatly her powers and responsibilities.

The opinion of this court was delivered by

ROGERS, J.—Testamentary guardianship is not determined by the marriage of a male ward, but the guardianship of a female is terminable by marriage. This is a well settled distinction. The

latter is the necessary consequence of the rights a husband acquires with regard to his wife's person and property. By marriage he acquires an absolute, unqualified right to her personal property, to her *choses in action*, when reduced to possession, and to the possession of her real estate. For this reason it is ruled, that although she is still in her minority, he may call on the guardian to settle his account, and pay him the balance: 2 Whart. Dig. 406, pl. 27; M'Pherson on Infants, 90, vol. 41 Law Lib.; 2 P. W. 103; 1 Ves. 90. These are acknowledged principles of the common law, necessarily resulting from the marital relations; but do they apply in the case of female wards, since the passage of the act of the 11th April, 1848; an act intended to secure the rights of married women? By that act, which seems to meet general approbation, with but few exceptions, a married woman must hereafter be considered a *feme sole* in regard to any estate of whatever name or sort, owned by her before marriage; or which shall accrue to her during coverture, by will, descent, deed of conveyance, or otherwise. The act works a radical and thorough change in the condition of a *feme covert*. She may dispose of her separate estate by will or otherwise as a *feme sole*. Her property is hereafter exempted from levy and execution for the debts or liabilities of her husband, except in certain specified cases. Her estate, whether real or personal, cannot be sold, conveyed, mortgaged, transferred, or in any manner encumbered by her husband, without her written consent, duly acknowledged before one of the judges of the Court of Common Pleas, that such consent was not the result of coercion on the part of the husband, but the same was voluntarily given, and of her own free will. In short, unless with her assent, the husband has no control over her estate, except as her agent, and by authority derived from her. Notwithstanding the act, however, the petitioner insists that by his marriage, which has taken place since the decease of his wife's father, the relation of guardian and ward is virtually dissolved; that he is entitled, by virtue of his marital rights, to assume the care and management of her property, in such way and manner as shall be most conducive to her interest, and under such restrictions as are provided by law. Although the application is stated to be made with the approbation and consent of his wife, yet it is very obvious her assent gives no additional validity to the claim, for, being a minor, she is incapable of giving consent. If it should happen that her estate is dissipated by an improvident husband, she would have the same legal right, notwithstanding, to complain of the conduct of the guardian, for a viola-

tion of duty in surrendering a trust committed to him by her deceased parent. The petitioner asks the care and control of her property, solely by virtue of his marital rights, without any complaint against the performance of the trust on the part of the guardian. It is that pretension alone which we are called on to decide. It is not difficult to understand the distinction between male and female wards, on the principles of the common law. It results necessarily from the marital relation, that the husband should have the custody and control of the wife's property, as well as her person, for the satisfactory reason, that, by the marriage, he acquires a present interest in her real and personal estate ; but it is not easy to perceive how the same consequence should follow, when, by an alteration in the law, the marriage ceases to confer on him any title whatever to her estate. And this is the state of the question since the passage of the act. The husband, it is true, claims the management of the estate as her trustee. But this pretension, if acceded to, will inevitably interfere with the working of the act, for I know of no restrictions provided by law which will effectually guard her rights. If her funds are suffered to go into his hands, under any conditions which the court may impose, it is easy to perceive how readily the intention of the legislature may be eluded, from the difficulty she would experience in the case of an unprincipled husband, in requiring or acquiring that possession and control of her separate estate which he here contemplates. To the testamentary guardian, her father has given the care and custody of her estate. Of this trust he cannot divest himself, nor can he be compelled to relinquish it, until she acquires by time a legal capacity to act for herself. It is plain, under the provisions of the act, when she attains her majority, the settlement must be made with her—the payment to her, or to her authorized agent, in the same manner as to a *feme sole*. It is possible, although I hope not probable, that when that time comes, she may not be as willing, as it appears she now is, to intrust the management of her estate to the care and control of her husband. But, be this as it may, we have the plain directions of the act for our guide. The testamentary guardianship, from necessity, is determined, so far as respects the control of her person, but nothing more. That is the plain result of the marriage contract; but, since the passage of the act, the same rule cannot be extended, for the reasons given, to her property. In this aspect, we see no difference between male and female wards. This presents a fair case for the application of the principle *cessante ratione cessat ipsa lex*. Decree affirmed.