**Stephanie A. LONG, Individually and Stephanie Long, Administratrix of the Estate of Vincent Robert Long, Deceased, Appellant,**

v.

**Dean YINGLING, Individually and Dean Yingling t/d/b/a Dean Yingling Used Cars, Appellee.**

Superior Court of Pennsylvania.

Argued April 23, 1997.

Filed Sept. 5, 1997.

Russell Montgomery, Altoona, for appellant.

Louis C. Long, Pittsburgh, for appellee.

Before KELLY, SAYLOR and EAKIN, JJ.

KELLY, Judge:

In this appeal, appellant, Stephanie Long, asks us to determine whether the Blair County Court of Common Pleas erred in denying her motion for summary judgment and granting appellee's, Dean Yingling's, motion for summary judgment. We hold that the trial court properly denied appellant's motion for summary judgment. We further hold that the trial court erred in granting summary judgment in appellee's favor. Accordingly, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

The relevant facts and procedural history of this appeal are as follows. On October 29, 1992, appellant and her husband, Vincent Long ("decedent"), visited appellee's used car lot for the purpose of looking at and possibly purchasing a used car. After speaking with appellant and the decedent, appellee gave the couple a 1982 Plymouth Reliant ("vehicle") to take for a test drive. The decedent took the driver's seat and appellant sat in the front passenger seat. The couple left appellee's used car lot in the vehicle and traveled west on Closson Road. As they were traveling west on Closson Road, the vehicle went through a stop sign protecting State Route 36 and collided with a pick-up truck that was traveling north on State Route 36. As a result of the collision, the decedent was killed and appellant sustained severe injuries to her head and pelvis.

On February 17, 1994, appellant's attorney and his expert, Neil Maines, visited Donaldson's Salvage Yard where the vehicle was taken after the accident. At this time, Mr. Maines inspected the vehicle and saw that the master cylinder[1] was intact. The owner of the salvage yard, however, would not allow Mr. Maines to purchase, borrow, or inspect the master cylinder because appellee still owned the vehicle.

Thereafter, appellant filed a writ of summons and a petition for discovery asking that the master cylinder be made available for inspection and held for safekeeping until the conclusion of this case. On March 1, 1994, appellant served the petition for discovery, along with a Rule Returnable ordering that the master cylinder be preserved, on appellee and the salvage yard owner. On May 19, 1994, appellant's agent went to the salvage yard to secure the master cylinder for testing. At this time, however, the master cylinder was missing from the vehicle.

On August 30, 1994, appellant filed a complaint in the Common Pleas Court of Blair County alleging that the collision was the result of appellee's negligence in allowing the vehicle to be test driven with a defective master cylinder and brake system. On October 13, 1994, appellant amended her complaint to include a claim of strict liability for permitting the vehicle to be driven in an unreasonably dangerous condition.

Thereafter, the parties engaged in extensive discovery. Appellant testified at her deposition that as she and the decedent approached the intersection of State Route 36, the decedent attempted to apply the brakes and the pedal went right to the floor. The decedent then stomped on the brakes two or three times and the vehicle traveled through the stop sign protecting State Route 36 and collided with a truck. Appellant also testified that as they entered the intersection, the decedent attempted to hold her back by putting his arm in front of her. Appellant further testified that the last thing she remembered was the decedent being thrown on top of her from the force of the collision.

Additionally, appellant filed two sworn affidavits in which two experts testified that the cause of the accident was a failure of the brake system of the vehicle, specifically caused by a defect in the master cylinder. Furthermore, the investigating police officer, Robert Clark, testified at his deposition that there were no signs of skid marks made by either vehicle involved in the collision prior to impact. Trooper John Wasicki, who was also one of the investigating officers, testified that after inspecting the vehicle, he determined that there was no defect in the brake system. Trooper Wasicki, however, did testify that he observed damage to the master cylinder which he believed had been caused by the collision.

The record also contains the deposition testimony of appellee's mechanic, Michael Long, who testified that he had inspected the vehicle prior to the accident and did not notice any damage to the master cylinder. Additionally, Mr. Long testified that he had driven the vehicle prior to the accident and did not experience any problems with the brake system. Furthermore, Laurie Harrison testified at her deposition that she had test driven the vehicle approximately two days prior to the accident and did not experience any problems with the brake system. The record also establishes that the vehicle had passed state inspection.

At the close of discovery, appellee filed a motion for summary judgment on August 21, 1996, and appellant filed a motion for partial summary judgment on August 28, 1996. Based upon the aforementioned facts, the trial court, by order dated October 23, 1996, denied appellant's motion and granted appellee's motion for summary judgment. Appellant now brings this timely appeal.

Appellant raises the following issues for our review:

A. DID THE COURT BELOW ERR IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON SPOLIATION?

---

1. The master cylinder is "the cylinder in a hydraulic-brake system from which brake fluid is forced to produce pressure at the individual wheels when the brake pedal is depressed." *Webster's Third New International Dictionary.*

B. DID THE COURT BELOW ERR IN DENYING THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN THIS CASE BASED ON SPOLIATION?

C. DID THE COURT BELOW ERR IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S NEGLIGENCE CLAIM?

D. DID THE COURT BELOW ERR IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS?

(Appellant's Brief at 9).

Initially, we note that our standard for reviewing a grant of summary judgment is well settled.

[S]ummary judgment is properly entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b); *Cosmas v. Bloomingdales Bros., Inc.*, 442 Pa.Super. 476, 480, 660 A.2d 83, 85 (1995) (citation omitted); *Aetna Casualty and Surety Company v. Roe*, 437 Pa.Super. 414, 419–20, 650 A.2d 94, 97 (1994) (citations omitted); *Accu–Weather, Inc. v. Prospect Communications, Inc.*, 435 Pa.Super. 93, 98–99, 644 A.2d 1251, 1254 (1994) (citation omitted); *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 558, 618 A.2d 945, 950 (1992), *allocatur denied*, 536 Pa. 630, 637 A.2d 290 (1993) (citation omitted). The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Aetna Casualty and Surety Company v. Roe, supra; Accu–Weather v. Prospect Communications, supra; Stidham v. Millvale Sportsmen's Club, supra.* Moreover, the burden is on the moving party to prove that no genuine issue of material fact exists. *Accu–Weather v. Prospect Communications, supra* (citing *Overly v. Kass*, 382 Pa.Super. 108, 111, 554 A.2d 970, 972

(1989))…. We are not bound by the trial court's conclusions of law, but may draw our own inferences and reach our own conclusions. *See Dauphin Deposit Trust Company v. World Mutual Health and Accident Insurance Company of Pennsylvania*, 206 Pa.Super. 406, 409, 213 A.2d 116, 117 (1965)…. We will reverse a grant of summary judgment only when the trial court has committed an error of law or abused its discretion. *Cosmas v. Bloomingdales Bros., Inc., supra; Aetna Casualty and Surety Company v. Roe, supra* (citations omitted); *Accu–Weather v. Prospect Communications, supra* (citing *Kelly by Kelly v. Ickes*, 427 Pa.Super. 542, 547, 629 A.2d 1002, 1004 (1993)).

*Butterfield v. Giuntoli*, 448 Pa.Super. 1, 10, 670 A.2d 646, 650 (1995). *Accord Roselli v. General Electric Co.*, 410 Pa.Super. 223, 226, 599 A.2d 685, 687 (1991), *allocatur granted*, 530 Pa. 645, 607 A.2d 255 (1992), *appeal discontinued* (1993). *See also* Pa.R.Civ.P. 1035.1–1035.4 (effective July 1, 1996).

I.

In her first issue on appeal, appellant contends that the trial court erred in granting appellee's motion for summary judgment based upon the theory of spoliation. Appellant maintains that this theory is inapplicable where (1) the allegedly defective master cylinder was owned and controlled by appellee; and (2) appellant diligently attempted to secure the allegedly defective master cylinder. We agree.

■ This Court has held that summary judgment is appropriate based upon the theory of spoliation when a plaintiff brings an action claiming that she suffered an injury as a result of a defective product, and fails to produce the product for inspection by the defense. *DeWeese v. Anchor Hocking Consumer and Industrial Products Group*, 427 Pa.Super. 47, 50, 628 A.2d 421, 423 (1993) (citing *Roselli v. General Electric Co., supra* at 228, 599 A.2d at 687–88). *Accord Schroeder v. Department of Transportation of the Commonwealth of Pennsylvania*, 676 A.2d 727, 730 (Pa.Cmwlth.1996), *allocatur granted*, 546 Pa. 672, 685 A.2d 549 (1996) (citations omitted). This rule was adopted in order to

serve the important public policy of preventing false claims by plaintiffs who are in a position to dispose of the allegedly defective product, making defense of such claims more difficult:

> To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

*DeWeese v. Anchor Hocking, supra* at 51, 628 A.2d at 423 (quoting *Roselli v. General Electric Co., supra* at 228, 599 A.2d at 687–88). *Accord Schroeder v. Department of Transportation, supra* at 730 (citations omitted).

Applying the theory of spoliation, the trial court found that appellee was entitled to summary judgment because appellant failed to preserve and produce the allegedly defective master cylinder for appellee's inspection. The trial court, however, failed to recognize the public policy interests which the theory of spoliation was designed to effectuate. Both the Pennsylvania Superior Court and Commonwealth Court have recognized that the policies behind requiring a plaintiff to preserve an allegedly defective product for the defendant's inspection are (1) to prevent fraudulent claims; and (2) to remove plaintiffs from the position of deciding whether the availability of the allegedly defective product would help or hurt their case. *See id.* In light of these policy interests and the facts and circumstances of produce the master cylinder for appellee's inspection does not entitle appellee to summary judgment.

■ Appellant was neither the owner nor in control of the allegedly defective master cylinder. Moreover, appellant was never in a position to dispose of the master cylinder or to decide whether its availability would help or hurt her case. *Cf. Roselli v. General Electric Co., supra* (summary judgment is appropriate based upon theory of spoliation where *owner* of allegedly defective coffee maker which shattered in her hand failed to produce product for defendant's inspection); *Schroeder v. Department of Transportation, supra* (summary judgment appropriate based upon theory of spoliation where *owner* of allegedly defective truck failed to preserve truck for defendant's inspection). Instead, appellee owned and controlled the allegedly defective master cylinder both before and after the accident. Thus, it would make no sense to require appellant to preserve and produce the master cylinder for appellee's inspection when appellee owned and controlled the master cylinder at all times. To do so would be contrary to public policy in that it would encourage defendants who own and control an allegedly defective product to dispose of the product, thereby placing themselves in a position so as to entitle themselves to summary judgment. *Cf. DeWeese v. Anchor Hocking, supra* at 51, 628 A.2d at 423 (quoting *Roselli v. General Electric Co., supra* at 228, 599 A.2d at 687–88)(it is contrary to public policy to put plaintiff in position of deciding whether availability of product would help or hurt his or her case).

"The ancient maxim, *Cessante ratione legis, cessat et ipsa lex.*, 4 Co., 34: (the reason for the law ceasing, the law itself also ceases) has long been applied in this Commonwealth." *Hengst v. Hengst,* 491 Pa. 120, 123, 420 A.2d 370, 371 (1980)(citing *Appeal of Cummings,* 11 Pa. 272, 276 (1849); *Nice's Appeal,* 54 Pa. 200, 201 (1867)). Because the policy considerations behind the rule requiring plaintiffs to produce an allegedly defective product for defense inspection are inapplicable under the facts and circumstances of this case, we conclude that appellant's failure to produce the allegedly defective master cylinder, which appellee owned and controlled both before and after the accident, does not entitle appellee to summary judgment.

The trial court also cited *DeWeese v. Anchor Hocking, supra,* for the proposition that even where the plaintiff had no control of the allegedly defective product, summary judg-

ment is appropriate based upon the theory of spoliation. In *DeWeese v. Anchor Hocking, supra*, an award of summary judgment was affirmed by this Court because the plaintiff failed to produce a glass carafe which exploded while he was working as a bus boy at a country club. We held that the plaintiff's failure to preserve the pitcher entitled the defendant to summary judgment because there was "no evidence tending to establish that the pitcher involved was manufactured or sold by either defendant." *Id.* at 51, 628 A.2d at 423.

The present case is distinguishable in several respects. In *DeWeese*, the allegedly defective product was owned and controlled by a third party to the suit, the country club. Here, the allegedly defective product was owned and controlled by appellee, the actual owner and seller of the product. Thus, unlike the situation in *DeWeese*, the public policy of preventing plaintiffs who own and control the product from disposing of the product is inapplicable. Moreover, unlike the plaintiff in *DeWeese*, appellant has presented evidence supporting her claim that the product was owned by appellee, and that it was defective. It is undisputed that appellee was the owner of the vehicle. Appellant testified at her deposition that when the decedent applied the vehicle's brakes, the pedal went right to the floor. The record also demonstrates that the vehicle did not leave any skid marks prior to the collision which is consistent with appellant's assertion that the vehicle's brakes malfunctioned. Furthermore, appellant has filed two sworn affidavits in which two experts testified that the accident was caused by a failure of the brake system of the vehicle, specifically caused by a defect in the master cylinder. Thus, we conclude that the trial court erred in theory of spoliation because (1) the trial court's granting of appellee's motion for summary judgment is inconsistent with the public policy of preventing plaintiff's who own and control an allegedly defective product from disposing of it; and (2) the record contains sufficient evidence from which a jury could find that the master cylinder malfunctioned. *See O'Donnell v. Big Yank, Inc.*, 696 A.2d 846, 848–49 (Pa.Super.1997) (summary judgment inappropriate based upon theory of spoliation where record contains sufficient evidence to create genuine issue of material fact as to whether product was defective).

## II.

In her second issue on appeal, appellant maintains that the trial court erred in denying her motion for summary judgment based upon the malfunction theory of products liability because there is no genuine issue of material fact as to whether the brakes of the vehicle malfunctioned. Appellant also claims that she was entitled to summary judgment based upon the theory of spoliation because appellee failed to preserve the master cylinder for her inspection. We disagree.

We first address appellant's argument that she was entitled to summary judgment because no genuine issue of material fact existed as to the malfunctioning of the brakes on the vehicle. It is well settled that:

[w]hen advancing a theory of strict product liability, a plaintiff has the burden of showing that the product was defective, that the defect was the proximate cause of his or her injuries and that the defect existed at the time the product left the manufacturer. *Woodin v. J.C. Penney Co., Inc.*, 427 Pa.Super. 488, 490, 629 A.2d 974, 975 (1993); *Vernon v. Stash*, 367 Pa.Super. 36, 48, 532 A.2d 441, 447 (1987); *Swartz v. General Elec. Co.*, 327 Pa.Super. 58, 66, 474 A.2d 1172, 1176 (1984). In certain cases of alleged manufacturing defects, however, the plaintiff need not present direct evidence of the defect. When proceeding on a malfunction theory, the plaintiff may "present a case-in-chief evidencing the occurrence of a malfunction and eliminating abnormal use or reasonable, secondary causes for the malfunction." *O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 435, 567 A.2d 680, 682 (1989). See also: *Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir.1979). From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale. *Vernon v. Stash, supra*, 367 Pa.Super. at 48, 532 A.2d at 448.

*Ducko v. Chrysler Motors Corp.*, 433 Pa.Super. 47, 50, 639 A.2d 1204, 1205 (1994). Furthermore, a defendant does not have to prove the existence of secondary causes for the accident or abnormal use of the product. *Roselli v. General Electric Co.*, *supra* at 230, 599 A.2d at 688. Defendant's only burden is to identify other possible non-defect oriented explanations. *Id. See also Lonon v. Pep Boys*, 371 Pa.Super. 291, 299, 538 A.2d 22, 26 (1988)(where defendant offers explanation inconsistent with existence of defect which is as probable as explanation consistent with existence of defect, defendant has met his or her burden).

■ Instantly, Trooper Wasicki testified at his deposition that after inspecting the vehicle, he determined that there was no defect in the brake system. Additionally, the record contains evidence that the vehicle had passed inspection and that it had been test driven approximately two days prior to the accident without experiencing any problems with the brake system. This constitutes sufficient evidence to raise a genuine issue of material fact as to whether the accident was the result of a malfunction in the brake system or the result of operator error. Thus, the trial court properly denied appellant's motion for summary judgment based upon her assertion that there was no factual dispute as to whether the brakes malfunctioned.

■ We now turn to appellant's assertion that she was entitled to summary judgment because appellee failed to preserve the master cylinder for her inspection. Appellant cites *Roselli v. General Electric Co.*, *supra*, for the proposition that summary judgment is appropriate in a products liability case whenever the party who owns the product fails to produce the product for the other party's inspection. This claim is meritless in light of our recent decision in *O'Donnell v. Big Yank, Inc.*, *supra*. The *O'Donnell* Court stated that *Roselli* does not hold that summary judgment is appropriate whenever the owner of an allegedly defective product fails to produce the product for the other party's inspection. *See O'Donnell v. Big Yank Inc.*, *supra* at 848. Rather, summary judgment is warranted only where the plaintiff fails to present evidence which, if believed, would allow her to meet her burden of proving defect, or where the defendant fails to rebut plaintiff's evidence with his own evidence which would allow him to meet his burden of identifying other non-defect oriented explanations. *See id.* at 848 (traditional concepts of burden of proof apply to a determination of whether summary judgment is appropriate based upon theory of spoliation).

■ Instantly, the record contains sufficient evidence from which a jury could infer that no malfunction in the braking system occurred. As we stated previously, the record demonstrates that the vehicle had passed inspection, and that it had been test driven approximately two days prior to the accident without experiencing any problems in the brake system. Additionally, Trooper Wasicki testified at his deposition that after inspecting the vehicle, he determined that there was no defect in the brake system. Thus, appellee can offer evidence disputing appellant's theory of malfunction, raising an inference that operator error was the cause of the accident. Hence, the mere fact that appellee failed to preserve the product for appellant's inspection does not entitle appellant to summary judgment.

### III.

In her third issue on appeal, appellant contends that the trial court erred in granting appellee's motion for summary judgment on appellant's claim based upon a theory of negligence. Appellant argues that the record contains sufficient evidence from which a jury could find appellee negligent for failing to inspect the vehicle. We agree.

■ In granting appellee's motion for summary judgment, the trial court found that appellant had failed to establish appellee owed any duty to appellant, or that appellee had breached any duty. In *Flavin v. Aldrich*, 213 Pa.Super. 420, 250 A.2d 185 (1968), this Court recognized that an automobile salesman was under a duty to the public not to sell a car which was defective where it knew or could have known of the defect by reasonable inspection. *Id.* at 426 n. 1, 250 A.2d at 188 n. 1 (quoting *Topelski v. Universal South Side Autos Inc.*, 407 Pa. 339, 180

A.2d 414 (1962)). We have previously concluded that appellant has presented sufficient evidence to create a genuine issue of material fact as to whether the brake system of the vehicle malfunctioned. Thus, it logically follows that appellant has presented sufficient evidence as to whether appellee breached his duty to conduct a reasonable inspection of the vehicle, ensuring that the vehicle was in a reasonably safe condition to be test driven by appellant. Hence, we conclude that the trial court erred in granting appellee's motion for summary judgment on appellant's negligence claim.

## IV.

In her fourth issue on appeal, appellant argues that the trial court erred in granting appellee's motion for summary judgment on her claim for negligent infliction of emotional distress. We agree.

A cause of action for negligence infliction of emotional distress may be sustained under either the impact rule or the bystander rule. The impact rule was recently stated by this Court as follows:

> [W]here ... a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of damages.

*Brown v. Philadelphia College of Osteopathic Medicine*, 449 Pa.Super. 667, 679, 674 A.2d 1130, 1135–36 (1996)(quoting *Potere v. City of Philadelphia*, 380 Pa. 581, 588, 112 A.2d 100, 104 (1955)). *Accord Stoddard v. Davidson*, 355 Pa.Super. 262, 266, 513 A.2d 419, 422 (1986). Under the bystander rule, a claim for negligent infliction of emotional distress may be sustained where the following factors are met:

> (1) Whether [the] plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a

direct emotional impact upon [the] plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether [the] plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Brown v. Philadelphia College of Osteopathic Medicine*, *supra* at 673, 674 A.2d at 1133 (quoting *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 194, 527 A.2d 988, 993 (1987)).

Instantly, appellant was located in the front seat of the vehicle next to the decedent when the collision occurred. Additionally, appellant sustained bodily injuries as a result of the accident. Furthermore, appellant testified that just prior to impact, she observed the decedent stomp on the brakes and put his arm in front of her to prepare her for impact. Moreover, appellant testified that the last thing she remembered was the decedent's body being thrown on top of her from the force of impact. Finally, the decedent was appellant's spouse. Thus, we conclude that the record contains sufficient evidence to allow appellant to proceed with her claim for negligent infliction of emotional distress under both the impact and bystander rules. Hence, the trial court erred in granting appellee's motion for summary judgment on appellant's claim for negligent infliction of emotional distress.[2]

Based upon the foregoing, we reverse the trial court's order granting appellee's motion for summary judgment on appellant's claims based upon strict liability, negligence and negligent infliction of emotional distress, and affirm the trial court's order denying appellant's motion for partial summary judgment. We remand this case to the trial court for further proceedings consistent with this opinion.

---

**2.** Appellee argues that we should sustain the trial court's granting of summary judgment on appellant's claim for negligent infliction of emotional distress because the record is devoid of evidence of appellee's negligence. Because we have previ-

ously determined that the record contains sufficient evidence to create an issue of material fact as to appellant's strict liability claim and her negligence claim, appellee's argument is meritless.

Order affirmed in part and reversed in part. Jurisdiction relinquished.