**Hospitality Associates of Tannersville, L.P. v. Aaron and Wright Technical Services**

C.P. of Monroe County, No. 1807-CV-2007.

*George Westervelt,* for plaintiff.
*Mark T. Sheridan* and *David J. Shannon,* for defendant.

HIGGINS, *J.,* February 8, 2013—On March 14, 2007, the Plaintiff, Hospitality Associates of Tannersville, L.P. (hereinafter "Hospitality"), filed a complaint against the defendant, Aaron and Wright Technical Services and LandAmerica Assessment Corporation (hereinafter "LandAmerica"). Hospitality seeks recovery of funds that were expended due to reliance on an allegedly erroneous property evaluation provided by LandAmerica to Marathon Asset Management (hereinafter "Marathon") pursuant to a contract therewith. On December 21, 2007, LandAmerica filed a motion for summary judgment. Following oral

argument and consideration of the parties' briefs, the Honorable Jerome P. Cheslock denied LandAmerica's motion on March 5, 2008.

On July 2, 2012, LandAmerica filed a second motion for summary judgment, and a brief in support thereof on November 2, 2012. On November 2, 2012, Hospitality filed an answer to LandAmerica's motion along with a countermotion for summary judgment and a brief in support thereof. Both parties have presented oral argument before this court. The pleadings and discovery in this matter are closed. There are no genuine issues of material fact, and the matter is ripe for summary judgment.

## DISCUSSION

Summary judgment may be granted pursuant to Pa. R. Civ. P. 1035.2 where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 468-69 (Pa. 1979). Summary judgment is properly entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. Pa. R. Civ. P. 1035(b); *Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 85 (Pa. Super. 1995).

Summary judgment may be granted only in cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 562 A.2d 279, 280 (Pa. 1989). The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the

moving party. *Davis v. Pennzoil Co.*, 264 A.2d 597 (Pa. 1970). Moreover, the burden is on the moving party to prove that no genuine issue of material fact exists. *Long v. Yingling*, 700 A.2d 508, 512 (Pa. Super. 1997). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson*, 412 A.2d at 469.

In response, the nonmoving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Phaff v. Gerner*, 303 A.2d 826 (Pa. 1973). The court may also accept as true all well-pled facts contained in the non-moving party's pleadings. *Mattia v. Employers Mut. Cos.*, 440 A.2d 616 (Pa. Super. 1982); *Ritmanich v. Jonnel Enters, Inc.*, 280 A.2d 570 (Pa. Super. 1971). A general denial is unacceptable and deemed an admission where it is clear that the defendant has adequate knowledge and that the means of information are within the control of the defendant. *Elia v. Olszewski*, 84 A.2d 188 (Pa. 1951).

## I. Facts before the Court

On April 25, 2005, Milestone Capital Corporation (hereinafter "Milestone") entered into an agreement of sale for the purchase of the Chateau Resort and Conference Center from Mountain Lake Properties. Pursuant to the agreement of sale, Milestone was provided a two month period to conduct and conclude any due diligence necessary for the purchase of the property. In order to finance the purchase of the property, Milestone approached Marathon for assistance. Milestone later assigned its interest in the

sale agreement to Hospitality.

In order to inform its financing decision, Marathon entered into an agreement with LandAmerica, of which Aaron and Wright is a subsidiary, to conduct a Property Assessment Condition Report of the property. Marathon and LandAmerica were the only parties to the consulting agreement signed for the evaluation of the property (hereinafter "agreement"). *Defendant's Motion for Summary Judgment*, Exhibit 'A'. Hospitality was not a direct party to the agreement nor is it mentioned anywhere in the agreement as an express third party beneficiary. *Id.* However, Hospitality did provide payment for LandAmerica's services to Marathon.

On June 14, 2005, LandAmerica provided Marathon with a property assessment report of the Chateau property (hereinafter "report"). Hospitality obtained and relied on the report in assessing the necessary repairs and renovations to the property. Hospitality alleges that the report was incorrect with respect to the existence and operational capacity of fire suppression sprinklers. As a result of its reliance, Hospitality had to expend $300,000.00 to install a sprinkler system and lost bookings during the installation period.

Section 2.1 of the report titled "purpose" provides "LAC (i.e. LandAmerica Assessment Corporation) was retained to conduct a property condition assessment of the subject property to assist in the underwriting of a proposed mortgage loan of the real property." *Defendant's 12/21/2007 Motion for Summary Judgment*, Exhibit

'C'. Additionally, Section 2.6 of the report titled "User Reliance" provides:

> The investigation was conducted on behalf of and for the exclusive use of Marathon Asset Management (Client), solely for use in a property condition evaluation of the subject property. This report and findings contained herein shall not, in whole or in part, be disseminated or conveyed to any other party, nor used by any other party, in whole or in part without prior written consent of Aaron & Wright (owned by LandAmerica). Aaron & Wright acknowledges and agrees that the report may be conveyed to and relied upon by client, the lender and the title insurer associated with the refinancing and/or property transfer of the subject property.

*Id.* These terms were not present in the agreement and there is no evidence that Marathon took action to assent to these conditions.

## II. Cross Motions for Summary Judgment

LandAmerica moves for summary judgment asserting that Hospitality is unable to proceed under any of the counts of the complaint. LandAmerica argues that the claim for breach of contract in Count I fails because Hospitality was neither a party to the agreement nor was it an intended third party beneficiary. LandAmerica further contends that it owed no duty of care to Hospitality and, therefore, Counts II through VII fail because each relies on LandAmerica breaching a duty owed to Hospitality.

Hospitality responds, also moving for summary

judgment as to liability. Hospitality concedes that it is not a party to the agreement, but that it does qualify as an intended third party beneficiary. Additionally, Hospitality argues that under both California and Pennsylvania law, it can maintain claims under Counts II through VII as an intended beneficiary of the report to whom LandAmerica owed a duty. Paragraph K in the terms and conditions to the agreement provides that California law is to govern any dispute under the agreement. However, a choice of law analysis is unnecessary because, as indicated by Hospitality in its brief, California and Pennsylvania are in agreement on these matters.

## A. Breach of Contract

LandAmerica moves for summary judgment as to Count I of the complaint, arguing that Hospitality's breach of contract claim must fail because it is neither a party to the agreement nor is it an intended third party beneficiary thereof. Hospitality responds that it may not have been a direct party to the agreement between LandAmerica and Marathon, but that it was an intended third party beneficiary. After consideration of the undisputed material facts, pertinent law, and the parties' arguments, LandAmerica's motion for summary judgment as to Count I will be granted.

"Three elements are necessary to plead properly a cause of action for breach of a contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792

A.2d 1269, 1272 (Pa. Super. 2002) (citations omitted). Generally, a contract cannot legally bind a person or entity who is not a party thereto. *Marshall v. Port Authority of Allegheny County*, 568 A.2d 931, 936 (Pa. 1990). However, a person or entity may have standing to sue for a breach of contract, though not a party thereto, if designated an intended third party beneficiary. *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983); *Scarpitti v. Weborg*, 609 A.2d 147 (Pa. 1992). Hospitality concedes that it was not a direct party to the agreement and, therefore, would have standing to sue for breach only as a third party beneficiary.

LandAmerica argues that Hospitality was not an intended beneficiary of the consultation agreement relying on *Guy*, supra, and *Scarpitti*, supra. In *Scarpitti*, the Pennsylvania Supreme Court found that homeowners were intended third party beneficiaries of a contact between an architect and subdivision developer. *Scarpitti*, 609 A.2d at 151. The contract imposed a duty on the architect to review all building plans and enforce subdivision restrictions. *Id.* The court found that "[i]t is the homeowners who have the greatest interest in uniform enforcement of restrictions and it is the homeowners who were benefitted by the establishment of a vehicle to enforce the restrictions." *Id.* In so ruling, the supreme court held that:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself...*unless*, [(1)] the circumstances are so compelling that recognition of the beneficiary's right is appropriate

to effectuate the intention of the parties, and [(2)] the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.* (citing *Spires v. Hanover Fire Insurance Co.*, 70 A.2d 828 (Pa. 1960); *Guy, supra*) (emphasis in original). "The first part of the test sets forth a standing requirement... [which] leaves discretion with the trial court to determine whether recognition of third party beneficiary status would be 'appropriate.'" *Guy*, 459 A.2d at 751.

In responding to LandAmerica's arguments and moving for summary judgment, Hospitality relies on *Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992), *Robert H. Sorosky M.D. Defined Benefit Pension Plan v. Hamill*, 56 Cal.Rptr.2d 313 (Cal. Ct. App. 1996), and *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005). However, these cases all consider the application of the standard articulated in the Restatement (Second) of Torts §552 which addresses the extension of a duty to third parties. These cases do not address breaches of contract or the designation of third party beneficiaries.

The undisputed material facts show that Hospitality was not a third party beneficiary to the agreement. In construing the agreement, the parol evidence rule will bar consideration of any prior or contemporaneous oral representations. *LeDonne v. Kessler*, 389 A.2d 1123, 1126 (Pa. Super. 1978). The rule's purpose is to "preserve the

integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous (or prior) oral declarations." *Id.* (quoting *Rose v. Food Fair Stores, Inc.*, 262 A.2d 851, 853 (Pa. 1970)). The language of the Agreement makes clear that there was no express intent by the parties to include Hospitality as a third party beneficiary. Therefore, under *Scarpitti*, the circumstances must be so compelling as to require recognition of Hospitality as a beneficiary to effectuate the parties' intent. As noted by the court in *Guy*, this is a threshold issue of standing whereby the court may evaluate whether relief is appropriate.

Here, the circumstances evince no such intent to benefit Hospitality. The agreement itself is a simple three page document and provides no evidence that Hospitality was contemplated as a beneficiary in forming the arrangement between LandAmerica and Marathon. Though the language in Section 2.6 of the report may not be part of the contract or binding on the parties, it is a clear expression that LandAmerica did not intend any party other than Marathon to benefit from the agreement or report. Moreover, Section 2.1, though similarly non-binding, clearly shows that LandAmerica's intent was only to provide an evaluation for Marathon's use in granting or denying a loan. Though Marathon itself may have intended to share the report with Hospitality and provide them with the benefits thereof, recognition requires effectuation of the *parties'* intent, not the sole intent of one. Hospitality does not qualify as a third party beneficiary to the consultation agreement

and, as such, lacks standing to sue for breach thereof. Therefore, summary Judgment will be granted in favor of LandAmerica as to Count I of the complaint.

## B. Tort Claims

LandAmerica also moves for summary judgment on Counts II through VI, arguing that these counts all consist of tort claims and Hospitality is unable to prove any duty owed by LandAmerica to establish liability. Hospitality responds and moves for summary judgment as to liability on these counts, arguing that although LandAmerica may not have owed a direct duty to Hospitality, it was foreseeable that Hospitality would obtain and rely on the information in the Report thus creating a duty of care. After consideration of the undisputed material facts, pertinent law, and the parties' arguments, LandAmerica's motion for summary judgment will be granted.

LandAmerica relies on *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571 (Pa. Super. 2006), arguing that Counts II through VI fail because no duty was owed by it to Hospitality. In *Wisniski*, the Superior Court asserted that:

'It is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage.'

*Id.* at 575-76 (quoting *Phillips v. Cricket Lighters*, 841

A.2d 1000, 1008 (Pa. 2003)). The court went on to note:

> 'The initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff. The existence of a duty is a question of law for the court to decide. In negligence cases, a duty consists of one party's obligation to conform to a particular standard of care for the protection of another. This concept is rooted in public policy.'

*Id.* at 576 (quoting *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)). LandAmerica contends that based on these standards, Hospitality's claims must fail because it at no time owed Hospitality a duty of care in completing the report.

Hospitality responds relying largely on *Bily*, supra, and *Bilt-Rite*, supra. In *Bily*, a public accounting firm was retained by a company to perform audits and issue reports on its 1981 and 1982 financial statements. *Bily*, 834 P.2d at 747. The firm conducted the audit and issued opinions addressed to the company. *Id.* Using the opinion on the 1982 financials, parties invested in the company. *Id.* at 748. The company then suffered severe losses and the investors hired an expert who found gross professional negligence in the firm's opinions. *Id.* The investors filed suit claiming fraud, negligent misrepresentation, and professional negligence. *Id.* at 748-49. The California Supreme Court took to outline the duties owed by a supplier of information:

> We conclude that an auditor owes no general duty

of care regarding the conduct of an audit to persons other than the client. An auditor may, however, be held liable for negligent misrepresentations in an audit report to those persons who act in reliance upon those misrepresentations in a transaction which the auditor intended to influence…Finally, an auditor may also be held liable to reasonably foreseeable third persons for intentional fraud in the preparation and dissemination of an audit report.

*Id.* at 747. The court thus held, with regard to the negligence claim, that:

[A]n auditor's liability for general negligence in the conduct of an audit of its client financial statements is confined to the client, i.e., the person who contracts for or engages the audit services. Other persons may not recover on a pure negligence theory.

*Id.* at 767.

However, with regard to negligent misrepresentation, the court found that:

[A] further narrow class of persons who, although not clients, may reasonably come to receive and rely on an audit report and whose existence constitutes a risk of audit reporting that may fairly be imposed on the auditor. Such persons are specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report. While such persons may not recover on a general negligence theory,

we hold they may…recover on a theory of negligent misrepresentation.

*Id.* In so holding, the court expressly adopted the approach articulated in the Restatement (Second) of Torts §552. *Id.* at 769. Section 552 provides, in pertinent part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts §552(1) and (2) (1977).

The court considered application of Section 552 appropriate, reasoning:

The rule expressed there attempts to define a narrow and circumscribed class of persons to whom or for whom representations are made. In this way, it recognizes commercial realities by avoiding both unlimited and uncertain liability for economic losses in cases of professional mistake and exoneration of the auditor in situations where it clearly intended to undertake the responsibility of influencing particular business transactions involving third parties.

*Bily*, 834 P.2d at 769. Liability under Section 552, however, is limited. *Id.* The court concurred with the authors of Section 552, asserting that:

[L]iability should be confined to cases in which the supplier '*manifests* an intent to supply the information for the *sort of use* in which the plaintiff's loss occurs.' This follows because the 'risk of liability to which the supplier subjects himself by undertaking to give the information...*is vitally affected by the number and character of the persons, and particularly the nature and extent of the proposed transaction*'...The 'intent to benefit' language of the Restatement Second of Torts thus creates *an objective standard* that looks to the specific circumstances...to ascertain whether a supplier has undertaken to inform and guide a third party with respect to *an identified transaction or type of transaction.* If such a specific undertaking has been made, liability is imposed on the supplier. If, on the other hand, the supplier 'merely knows of the ever-present possibility of repetition to anyone, and the

possibility of action in reliance upon the information on the part of anyone to whom it may be repeated,' the supplier bears no legal responsibility.

*Id.* at 769-70 (quoting Restatement (Second) of Torts §552, com. (a) and (h)) (emphasis in original).

Hospitality asserts that the case at bar should be decided in accord with *Hamill,* supra, applying the *Bily* standard to an analogous factual scenario. In *Hamill,* A borrower sought a loan to be secured by a second trust deed on her residence. *Hamill,* 56 Cal.Rptr.2d at 314. The lender requested an appraisal, title report, and encumbrance information before issuing the loan. *Id.* The borrower retained an appraiser to evaluate the property, advising him that the appraisal would be used to obtain a loan for which the property would serve as security. *Id.* Based on the appraisal report, the lender borrowed funds from his pension plan and loaned them to the borrower in exchange for the deed. *Id.* at 315. The borrower defaulted on the loan and, due to the appraiser's overestimation of the property value, the lender suffered a loss. *Id.* The court found that the lender was not the appraiser's client and, therefore, the lender could not recover for negligence. *Id.* at 316. However, the court permitted the lender to proceed on a negligent misrepresentation claim finding that the appraiser knew the report was needed for a third party who would rely thereon in lending the borrower money. *Id.* at 317.

Hospitality further contends that even if Pennsylvania

law governs despite the clause in the agreement the result is the same under *Bilt-Rite*, supra. In *Bilt-Rite*, an architect provided plans and specification for a construction project to a school district. *Bilt-Rite*, 886 A.2d at 288. The architect had full knowledge that the submitted plans would be included in a "bid package" supplied to prospective contractors bidding on the project. *Id.* A contractor, relying on the plans in calculating its bid, obtained the construction contract, but suffered economic loss due to the architect's inaccurate plans and specifications which led to additional unforeseen work. *Id.* In holding the architect liable to the contractor, the Pennsylvania Supreme Court formally adopted Section 552 and undertook an analysis similar to the California Supreme Court in *Bily*. *Id.* at 285-88.

Under the traditional tort analysis articulated in *Wisniski*, Hospitality would not have a claim against LandAmerica. There is nothing in the complaint for facts before the court to suggest the creation of a duty. The only duty owed by LandAmerica was to Marathon as created by the agreement. Since Hospitality was neither a party nor third party beneficiary to the agreement, nor in any other way engaged with LandAmerica, there was no duty owed which could have been breached.

Hospitality's claims for negligence similarly fail under the alternative analysis under *Bily*, *Hamill*, *Bilt-Rite*, and Section 552. As the language in Section 552 and analysis by the courts demonstrate, Section 552 does provide for an extension of liability to a class of foreseeable third parties. However, as expressly noted in *Bily* and *Hamill*, such a

third party claimant cannot maintain a negligence action, only the client may do so. Therefore, summary judgment will be entered in favor of LandAmerica on Counts III and IV of the complaint as each sound in negligence.

Though Count II and VI may be cognizable under Section 552 as each alleges a tortuous misrepresentation of information, Hospitality is inappropriate as a third party claimant. Under the court's analysis in *Bily*, to maintain an action for negligent misrepresentation there must be a manifest intent by LandAmerica that the report be relied upon for the "sort of use…an identified transaction or type of transaction" that Hospitality used it for. To maintain an action for fraud, Hospitality must fall within the class of "reasonably foreseeable third persons."

There is no evidence here that LandAmerica had any intent that the report be relied upon for use in informing renovation and repair decisions. Both the Agreement and report reflect that the report was intended for use by Marathon, and Marathon was intended to use it in assessing an appropriate loan amount based on the value of the property. Hospitality's use of the report to then inform renovation and repair decisions is not the same "sort of use." Moreover, Hospitality was not a foreseeable third party of any alleged fraud. The report was contracted for and intended to be used to inform Marathon's decision in issuing a loan. It would not be reasonably foreseeable that Hospitality would then use the report to inform renovation and repair decisions.

This case is factually dissimilar to *Bily*, *Hamill*, and *Bilt-Rite*. In each of those cases, the third party use was a foreseeable extension of the information provided. In *Bily*, a financial audit of a company could foreseeably be used to inform investment decisions. In *Hamill*, the appraiser knew that his report would be used to inform the lender's decision. In *Bilt-Rite*, the architect was aware that his plans and specifications would be included in the "bid package" and thus relied on by contractors in bidding on and completing the project. Here, however, LandAmerica was approached to conduct an evaluation of the property to inform Marathon's lending decision, but the Report was not used to inform some other financial decision; it was relied on for renovations and repairs. Unlike *Bily*, *Hamill*, and *Bilt-Rite*, the use of the information in this case was not foreseeable and, in fact, did not involve the same variety of transaction. Therefore, summary judgment will be entered in favor of LandAmerica as to Counts II and VI.

## C. Assignment of Claims

On February 21, 2008, Marathon assigned Hospitality any and all rights that Marathon may have against LandAmerica based on the alleged inaccuracies in the report. Assuming that the assignment is valid, this would not support any claims other than those already available to Hospitality. Hospitality on its own would be unable to maintain a claim for breach of a fiduciary duty, Count V, or unjust enrichment, Count VII, against LandAmerica and is unable to do so using the assignment.

There is no evidence of an independent fiduciary duty or other relationship existing between Hospitality and LandAmerica. Hospitality may have paid LandAmerica, but the payment was for the contracted evaluation conducted for Marathon to inform its lending decision pursuant to the agreement. Therefore, any basis for a breach of fiduciary duty or unjust enrichment claim must emanate from Marathon's assignment. Neither the complaint nor any other evidence shows an injury suffered by Marathon as a result of any alleged action by LandAmerica. Even if there had been inaccuracies in the report, it served its purpose for Marathon in assessing the loan amount and, based on the evidence and pleadings, Marathon has suffered no loss as a result thereof. Therefore, since Marathon suffered no injury from any purported act by LandAmerica, the assignment of claims would provide Hospitality with no additional causes of action, nor allow them to maintain their own for breach or unjust enrichment. Summary judgment will be entered in favor of LandAmerica as to Counts v. and VII of the complaint.

## ORDER

And now, February 8, 2013, upon consideration of the defendant's motion for summary judgment, plaintiff's answer and countermotion for summary judgment, and their briefs and arguments in support thereof, it is ordered as follows:

1. The motion for summary judgment by Defendants Aaron and Wright Technical Services and LandAmerica

Assessment Corporation is granted.

2. The motion for summary judgment by Plaintiff Hospitality Associates of Tannersville, L.P., is denied.

3. Plaintiff's claims against defendants are dismissed.