674 A.2d 1130

**Dennis and Rita BROWN, H/W**

v.

**PHILADELPHIA COLLEGE OF OSTEOPATHIC MEDICINE and Dr. Harvey Bryant.**

**Appeal of PHILADELPHIA COLLEGE OF OSTEOPATHIC MEDICINE.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1995.

Filed April 18, 1996.

670

Angela L. Dumm, Philadelphia, for appellant.

Gary S. Dion, Philadelphia, for appellees.

Before McEWEN, CIRILLO and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This appeal involves a claim for negligent infliction of emotional distress originally brought by Rita Brown, appellee herein, and her husband, Dennis Brown, against Philadelphia College of Osteopathic Medicine ("PCOM"), appellant herein, and Dr. Harvey Bryant. On April 15, 1993, default judgment was entered against Dr. Bryant due to his failure to enter an appearance. No damages, however, were assessed against Dr. Bryant. Following the conclusion of a subsequent three-

day bench trial on October 27, 1994, judgment was rendered in favor of appellee and against appellant for $40,000.[1] Thereafter, appellant filed a motion seeking judgment notwithstanding the verdict or, alternatively, a new trial. Presently, appellant appeals the trial court's denial of such request.

The facts upon which appellee was allowed recovery for her claim of negligent infliction of emotional distress were adequately summarized by the trial court as follows:

In September of 1990, the Browns discovered [that] Mrs. Brown was pregnant. They chose Dr. Harvey Bryant as Mrs. Brown's Obstetrician–Gynecologist, and registered with the Labor and Delivery Department of PCOM. On December 27, 1990[,] Mrs. Brown, who was approximately 16 weeks pregnant, began experiencing difficulties with the pregnancy. Mrs. Brown contacted Dr. Bryant and, in compliance with his instructions, went to PCOM and was seen in the emergency room. An ultrasound was performed by the attending physician and she was told to return home but to come back to the emergency room if complications developed.

On December 28, 1990 at approximately 3:00 p.m.[,] Rita, accompanied by her husband, arrived at the emergency room of PCOM, complaining of vaginal bleeding, severe abdominal pain and nausea. Sometime between 3:20 p.m. and 3:45 p.m.[,] Mrs Brown was placed in an examining room. While in the examining room, Mrs. Brown's condition worsened and at approximately 5:10 p.m. she experienced a miscarriage.

Mrs. Brown testified that she remained in the examining room for approximately one hour and 15 minutes before being seen by a physician. During that time she continued to experience increased vaginal bleeding, abdominal pain and nausea. Mrs. Brown further testified that [, during this period,] she miscarried with only her husband present and that the fetus remained between her legs, in a pool of blood, for approximately 15 minutes. At that time, Dr. Robert F.

1. We note, also, that the lower court found in favor of appellant as to Dennis Brown's claim.

Sing appeared, cut the umbilical cord and placed the fetus in a pan. A nurse [then] placed the fetus in Mrs. Brown's arms and took photographs of the fetus and Mrs. Brown. Dr. Sing testified that this was done to "alleviate their stress" and to "help them bond." (N.T. Oct. 1994, p. 136.)

Trial court opinion, 7/19/95 at 2–3.

In rendering its verdict in favor of appellee, the trial court applied the principles set forth by our Supreme Court in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). *Sinn* established the standard for liability in cases founded upon an individual's personal observation of a physical injury negligently inflicted by another upon a third person. *See Nagy v. Bell Tel. Co. of PA.,* 292 Pa.Super. 24, 436 A.2d 701 (1981) (citing *Sinn, supra* ); *Hoffner v. Hodge,* 47 Pa.Commw. 277, 407 A.2d 940 (1979). The standard adopted in *Sinn* is based upon the concept of reasonable foreseeability and, in determining whether liability attaches, requires an analysis of the following three factors:

(1) Whether [the] plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon [the] plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether [the] plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 194, 527 A.2d 988, 993 (1987) (citing *Sinn, supra* ). This has become known as the "bystander rule." Based upon our review of the facts in this case, however, it is evident that we are not here presented with such a situation.

The trial court described the circumstances upon which liability was established as follows:

[Appellee] presented herself at the hospital, had a miscarriage and was the one who experienced the negligent treatment of the physician and hospital staff.

> [Appellee] experienced much more than a "sensory and contemporaneous observation of the incident." The alleged incident occurred to [appellee's] body. Not only did she witness the incident, she also physically felt the incident as it occurred.

> [I]t is hard to imagine a closer relationship than that between a mother and her fetus. They are intertwined within one body. Their lives are separate but one.

Trial court opinion, 7/19/95 at 5 (emphasis added). Admittedly, we find this language to be the source of some confusion. It is clear that the lower court initially concluded that the negligent incident giving rise to liability was not one observed by appellee but, instead, one committed upon her person. Later, however, this finding was qualified, apparently in an attempt to make the facts of this case susceptible to an analysis under the bystander rule, by the suggestion that the negligent act was the mishandling of the fetus as a separate individual. Since an analysis of appellee's right to recovery depends upon this distinction, we must first identify the nature of the negligent act.

Based upon our review of appellee's averments in her complaint and viewing the facts of the treatment she received as a whole, we find that appellant's failure to treat appellee in a timely fashion and with due care constituted a tort inflicted upon appellee *herself*. For example, appellee's complaint alleges that appellant was negligent in failing to take appropriate precautions relating to her care and comfort and, further, that appellant did not adequately monitor and console her. Moreover, the handing of the fetus to appellee and the taking of photographs is relevant since it resulted in exacerbating appellee's suffering. Therefore, the trial court's application of *Sinn, supra*, was erroneous.

In its first contention, appellant argues that no two reasonable minds could fail to agree that the verdict was improper since, under the laws of this Commonwealth, the factual record does not support a claim for negligent infliction of emotional distress. Appellant bases this assertion upon the claim that, since the pronouncement of *Sinn*, Pennsylvania

courts have only allowed recovery on claims for negligent infliction of emotional distress outside of the bystander context on two occasions. Appellant argues that to permit recovery of damages in this case would, therefore, be inappropriate and urges us to grant its request for judgment notwithstanding the verdict.

In reviewing an order denying judgment notwithstanding the verdict, it is our duty to determine whether there was sufficient competent evidence to sustain the verdict. *Armstrong v. Paoli Memorial Hosp.*, 430 Pa.Super. 36, 633 A.2d 605 (1993), *alloc. denied*, 538 Pa. 663, 649 A.2d 666 (1994). Judgment notwithstanding the verdict should be entered only in a case where, granting the verdict winner the benefit of every favorable inference reasonably drawn from the evidence, the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Id.*

Although there exists consensus on the permissibility of recovery for negligent infliction of emotional distress based upon the bystander rule, a close inspection of the cases in this Commonwealth reveals inconsistencies in the theories upon which a cause of action for negligent infliction of emotional harm outside of the context of bystander liability can be predicated. These inconsistencies represent differences in the substantive elements that must be proven to make out a claim.

After a review of this inconsistent caselaw, we find that Judge Brosky, in his opinion in *Stoddard v. Davidson,* succinctly set forth the proper methods under which a cause of action for negligent infliction of emotional harm will be sustained.

[A] cause of action for negligent infliction of emotional distress initially required a physical impact. That element was declared not essential in *Niederman[ v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) ] if the plaintiff was in the zone of danger. Finally, the plaintiff's presence within that zone was held to be not necessary subject to the [applicability of *Sinn, supra* ]. *Niederman* and *Sinn* are, thus, two alternate methods to establish a case for negligent infliction in

the absence of physical impact. However, impact remains the basic means to plead the cause of action. *Potere v. City of Philadelphia,* 380 Pa. 581, 589, 112 A.2d 100, 104 (1955). If impact is averred, the requirements of either *Niederman* or *Sinn* simply are not necessary.

355 Pa.Super. 262, 266, 513 A.2d 419, 422 (1986).[2] The "physical impact rule" and "zone of danger rule", as they have come to be known, provide, therefore, two circumstances under which recovery will be permitted for negligent infliction of emotional distress outside of the bystander context.

The continued validity of the physical impact rule finds support in a number of cases. In *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 611 A.2d 1174 (1992), the plaintiff was a trainee at a fire-fighting school and, during a simulated fire-fighting exercise, had put on an air pak which had been mistakenly filled with carbon monoxide instead of oxygen. The plaintiff suffered injuries as a result of his inhalation of the carbon monoxide and, thus, sought recovery from Mine Safety Appliance Corporation, the manufacturer of the air pak. Since liability was admitted by the defendant, the case went to the jury solely on the issue of damages. Our Supreme Court held that, because plaintiff had suffered physical injury, albeit relatively minor, "[a]ll of the consequent psychological and emotional pain and suffering [was] compensable ... under the so-called 'impact rule.' " *Id.* See also *Carson v. City of Philadelphia,* 133 Pa.Commw. 74, 574 A.2d 1184 (1990) (a physical impact analysis was performed to determine entitlement to relief on a claim for negligent infliction of emotional distress); *Tomikel v. Com., Dept. of Transp.,* —— Pa.Commw. ——, ——, 658 A.2d 861, 864 (1995) ("Where it is definitely established that injury and suffering were proximately caused by an act of negligence, and any degree of physical impact, however slight, can be shown, recovery for such injuries and suffering is a matter for the jury's determination"). Indeed, when our Supreme Court set forth the zone

2. While one judge in *Stoddard* concurred in the result and another dissented, we note that the dissent agreed with the legal principles set forth and disagreed solely as to the application of that law to the facts of the case.

of danger rule in *Niederman*, it indicated that the physical impact rule was not intended to be entirely abrogated:

> We today choose to abandon the requirement of physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases ... where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact.

*Niederman*, 436 Pa. at 413, 261 A.2d at 90 (emphasis added).

While the above-cited cases have explicitly recognized the continued validity of the impact rule as a basis on which to establish a *prima facie* case of negligent infliction of emotional distress, other cases appear to have held to the contrary. Most recently, in *Hunger v. Grand Central Sanitation & Gary Perin*, this Court stated that:

> [a] cause of action for negligent infliction of emotional distress exists in **only** two circumstances: 1) where a close family member experiences a contemporaneous sensory observance of physical injuries being inflicted on another family member, *Krysmalski v. Tarasovich*, 424 Pa.Super. 121, 622 A.2d 298 (1993); or where the plaintiff nearly experiences a physical impact in that he was in the zone of danger of the defendant's tortious conduct, *Kazatsky v. King David Memorial Park, Inc., supra.*

447 Pa.Super. 575, 670 A.2d 173 (1996) (emphasis added).[3] Further, certain cases such as *Hoffner v. Hodge*, 47 Pa. Commw. 277, 407 A.2d 940 (1979), even suggest that the zone of danger test is no longer valid. In *Hoffner*, the Commonwealth Court stated that

> *Niederman, supra*, no longer represents the law of the Commonwealth in [the area of negligent infliction of emotional distress]. In an attempt to eliminate the "arbitrariness" inherent in the "zone of danger" test, the Supreme

---

**3.** We note, however that in *Kazatsky, supra*, which is relied upon in *Hunger, supra*, our Supreme Court stated that the zone of danger rule is a **limited exception to the impact rule** whereby the requirement of a physical impact as a precondition to recovery was abandoned in those cases where the plaintiff was in personal danger of physical impact from the negligent force and actually feared physical impact although no physical impact had actually occurred.

Court substituted therefor an analysis based on the traditional tort law concept of foreseeability.

*Id.* (citations omitted). Additionally, in *Neff v. Lasso,* 382 Pa.Super. 487, 555 A.2d 1304 (1988), a panel of this Court stated that the zone of danger test had been abandoned upon the acceptance of the bystander rule.

Most troubling in this regard, however, is *Armstrong, supra.* In *Armstrong,* a panel of this Court attempted to address the issue of "whether Pennsylvania recognizes an independent tort of negligent infliction of emotional distress." In doing so, the Court stated:

> When we look at Pennsylvania appellate cases ... it becomes clear that Pennsylvania allows recovery for negligent infliction of emotional distress under two circumstances. First, and most commonly, in cases in which there is liability to a bystander. *Sinn v. Burd, supra,* and its progeny. Second, Pennsylvania also recognizes recovery in situations in which there is a contractual or fiduciary duty. *Crivellaro [v. Pennsylvania Power and Light,* 341 Pa.Super. 173, 491 A.2d 207 (1985).]

*Armstrong,* 430 Pa.Super. at 47–55, 633 A.2d at 611–615 (footnote omitted). Accordingly, *Armstrong* appears to have restricted recovery in cases not involving the bystander situation to those in which there is a breach of an underlying contractual or fiduciary duty. Our reading of *Armstrong* would seem to indicate, therefore, that the zone of danger and physical impact rules are no longer applicable. In a concurring opinion in *Hunger, supra,* Judge Beck, agreed with the contractual relationship based theory of *Armstrong* as a valid basis upon which an action for negligent infliction of emotional distress could be based, but also noted the continuing validity of the bystander and zone of danger rules.

Finally, certain cases suggest that the bystander rule is the only basis upon which a cause of action for negligent infliction of emotional distress may be based. *See, e.g., Salerno v. Philadelphia Newspapers, Inc.,* 377 Pa.Super. 83, 546 A.2d 1168 (1988) (the parameters for pleading a cause of action for

negligent infliction of emotional distress are set forth under the bystander rule).

■■■■ Clearly, there is confusion as to the bases upon which relief can be sought and, unfortunately, this area of the law will remain unsettled until our Supreme Court provides further guidance. Nevertheless, we believe that our position in this case, acknowledging the continuing validity of the physical impact rule, is appropriate. Applying this rule to the instant case, we find that, while appellee was not entitled to recovery under *Sinn*, the impact rule entitles her to the recovery granted by the trial court. The impact rule has been stated as follows:

> [W]here ... a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of damages.

*Potere*, 380 Pa. at 588, 112 A.2d at 104. *Accord, Stoddard, supra.* A legal duty of care is owed by hospitals to persons receiving emergency room treatment. *Riddle Memorial Hosp. v. Dohan*, 504 Pa. 571, 573, 475 A.2d 1314, 1316 (1984). We believe that the finding of a breach of this duty provides a sufficient basis for recovery by appellee. Instantly, appellant's breach of this duty resulted in a physical impact upon appellee in that she experienced physical harm during her miscarriage as a result of appellant's failure to attend to her and, further, was physically impacted when she was given the fetus to hold. While this impact was not directly with appellant, it constitutes sufficient physical impact under *Stoddard, supra.* In *Stoddard*, the jostling and jarring of an automobile's occupants while it drove over a corpse was held to be sufficient physical impact. *See also Zelinsky v. Chimics*, 196 Pa.Super. 312, 175 A.2d 351 (1961).

■■■■ We next address appellant's remaining two claims underlying its contention that the trial court erred in denying its request for judgment notwithstanding the verdict. We find appellant's first argument that appellee was required and

failed to establish the requisite negligence, to be devoid of merit. Appellant claims that the duty upon appellee to show that it was negligent is tantamount to a duty to prove medical malpractice underlying the events in the instant case. Based upon this allegation, PCOM argues that it was incumbent upon appellee to introduce expert testimony to show that PCOM's conduct diverged from acceptable practices under the circumstances presented. While we agree that the issue of whether appellant was negligent in failing to provide timely emergency room care to appellee is one dealing with medical malpractice, we are not persuaded by appellant's argument.

■ There is an exception to the general rule requiring expert testimony to establish negligence in malpractice actions when "the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non[-]professional persons." *Brannan v. Lankenau Hosp.*, 490 Pa. 588, 417 A.2d 196 (1980). We find that, in light of the circumstances of this case, it is clear that the issue of whether appellant was negligent in treating appellee was an issue within the range of the ordinary experience and comprehension of non-professionals; therefore, expert testimony was not required in this case. The negligent treatment of appellee comprised appellant's failure to attend to her in a timely fashion and appellant's presentation of the fetus to her for purposes of taking a photograph.

■ Next, appellant alleges that appellee failed to satisfy her burden of establishing that she suffered physical injuries as a result of the emotional distress. In determining whether appellee sustained the requisite physical injuries, we are guided by the Restatement (Second) of Torts § 436A which states:

**Section 436A Negligence Resulting in Emotional Disturbance Alone**

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable

damage, the actor is not liable for such emotional disturbance.

Further, comment c to this provision provides:

[L]ong continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued emotional disturbance, as for example in the case of repeated hysterical attacks, or mental aberration may be classified by the courts as illness, notwithstanding their mental character.

We have interpreted this provision as follows:

Relying on Comment c to § 436A, a panel of this court held that "symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and ... ongoing mental, physical and emotional harm" sufficiently stated physical manifestations of emotional suffering to sustain a cause of action. *Love v. Cramer*, 414 Pa.Super. 231, 606 A.2d 1175 (1992). Cases which the *Crivellaro* court collected from other jurisdictions cite depression, nightmares, nervousness, insomnia and hysteria as physical symptoms warranting recovery. *Crivellaro*, 341 Pa.Super. at 180, 491 A.2d at 210.

*Armstrong*, 430 Pa.Super. at 43, 633 A.2d at 609. The trial court adequately addressed the issue of appellee's physical harm in the present case as follows:

In the instant case, [appellee] did testify to harm as a result of the emotional distress. [Appellant's] contention that [appellee] failed to testify to bodily harm is devoid of merit as evidenced by the notes of testimony and the psychiatric report. [Appellee] testified that since the incident she has experienced knots in her stomach, nightmares, low self-esteem, and is easily frightened (N.T. Oct. 1994, pp. 196–202). These problems have prompted her to investigate professional counseling options. Richard B. Saul, M.D., who evaluated [appellee] thirteen months after the incident, confirmed [appellee] is experiencing ongoing mental and physical harm as a result of the incident. His report concludes, "it is my opinion with a reasonable degree of

medical certainty that because of the treatment she received during a very traumatic period when she was aborting that she now suffers from Major Depression."

Certainly [appellee] meets, if not exceeds, the compensable damage requirements necessary to allege negligent infliction of emotional distress as set forth by comment c of the Restatement (Second) of Torts.... [Appellee's] symptoms were not merely transitory, they were apparent to the medical doctor over one year after the incident. [Appellee] continues to suffer from weight gain, sexual difficulties, anxiety, nightmares and loss of self-confidence attributable to the emotional distress caused by her emergency room visit.

Trial court opinion, 6/30/95 at 7–8. Viewing trial court findings in accordance with the precedent set forth above, we do not find that judgment notwithstanding the verdict is warranted. *Armstrong, supra.*

Lastly, appellant advances three claims in support of its contention that the trial court erred in denying its motion for a new trial. The trial court has inherent power to grant a new trial and the power to grant or deny a motion for a new trial lies within the court's discretion, and that court's decision will not be overturned on review unless the court acted capriciously or palpably abused its discretion. *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985). Moreover, "[i]t should be obvious that where, as here, the trial court sat as finder of fact in a non-jury proceeding, its authority to grant a new trial to correct an error of law or an injustice is enhanced, and the appellate court's authority to override the trial court's decision is proportionately diminished." *Spang & Co. v. U.S. Steel Corp.,* 519 Pa. 14, 24–25, 545 A.2d 861, 866 (1988).

First, appellant claims that a new trial is warranted because the lower court failed to properly apportion liability between it and Dr. Harvey Bryant. Instantly, appellant contends that it was inappropriate for the trial judge to assess

damages against it alone without first apportioning liability between the two defendants.

The trial judge entered a verdict against appellant in the sum of $40,000 and noted, as follows, that an additional hearing would be necessary to assess damages in the case of Dr. Bryant:

There is one more matter. It doesn't concern [appellant]. I think in order to assess damages in the case of Dr. Bryant, you have to have a separate procedure and I think you would have to give him notice.

N.T., 10/27/94 at 223.

■■■■■ "It is for the court to determine, as a matter of law, whether multiple defendants are joint tortfeasors." *Ariondo v. Munsey*, 122 Pa.Commw. 475, 553 A.2d 94 (1989). The facts in the instant case clearly indicate that appellant and Dr. Bryant were joint tortfeasors. *See id.; Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674 (1982). Accordingly, appellant and Dr. Bryant are jointly and severally liable for the damages that appellee sustained. For this reason, we believe that it was error for the trial court to assess damages against appellant alone and reserve imposition of damages against Dr. Bryant. Additionally, apportionment remains relevant in cases where joint tortfeasors are jointly and severally liable since, in an action for contribution between the tortfeasors, apportionment determines one defendant's liability to the other. *Ariondo, supra.* Accordingly, we remand this case for a determination as to appellee's total damages and apportionment of such between the joint tortfeasors.

Further, appellant claims entitlement to a new trial based upon the allegation that the trial court precluded appellant from cross-examining appellee regarding her ability to track time. Based upon our review, we find that the trial court did not improperly prevent appellant from pursuing questions regarding appellee's ability to estimate time and appellant has failed, in its brief, to raise any specific instances of such. Thus, we find this issue to be meritless.

Finally, appellant requests a new trial on the ground that the verdict was against the weight of the evidence. "[A]n appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge." *Thompson, supra.* Instead, appellate review of the trial court's grant or denial of a new trial is to focus on whether the trial judge palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the verdict. *Id.* Instantly, our review of the record reveals no such abuse of discretion on the part of the trial court and, thus, appellant's final contention fails.

Remanded to the Court of Common Pleas of Philadelphia County for a new trial, limited to the issue of damages and apportionment of liability consistent with this opinion. Jurisdiction relinquished.

McEWEN, J., dissents.