Sidonie PAVES, Appellee,

v.

Dr. Barry CORSON, Carol Corson, Appellants (at 412).

Sidonie Paves, Appellant (at 478),

v.

Barry Corson, Carol Corson, Appellees.

Superior Court of Pennsylvania.

Argued July 27, 2000.
Filed Dec. 14, 2000.
Reargument Denied Feb. 14, 2001.

Mason Avrigian, Jr., Blue Bell, for Barry Corson and Carol Corson.

Gerald B. Baldino, Jr., Media, for Paves.

Before: JOYCE, LALLY–GREEN and BECK, JJ.

BECK, J.:

¶ 1 This appeal arises out of a lawsuit filed by plaintiff-appellee Sidonie Paves against her son and daughter, defendants-appellants Dr. Barry Corson and Carol Corson.[1] After trial, the jury returned a verdict in favor of Paves in the total amount of $4,133,670. We affirm in part and reverse and remand in part.

### FACTUAL AND PROCEDURAL BACK-GROUND

¶ 2 In the fall of 1986, Sidonie Paves had been estranged from her children, Barry and Carol Corson, for about twenty years. She had been living in Florida and had begun to fear for her safety as the result of a burglary at her home. She traveled to Pennsylvania and arrived at the home of Carol Corson on October 31, 1986. Dr. Barry Corson met Paves there after learning of her arrival. Paves declared she wanted a relationship with her children and desired their assistance in safeguarding $82,000 in checks she had brought with her from Florida. Testimony at a fifteen day trial revealed two strikingly different tales regarding what happened between the parties over the next five years. As is clear from the verdict in the case, the jury apparently believed Paves's version of events, and we must accept those findings where they are supported by the record.

---

1. Sidonie Paves has also filed a cross-appeal, and thus technically is an "appellant." For purposes of clarity, however, we refer to Paves, the verdict winner below, as the appellee, and her children as appellants.

*Gray v. H.C. Duke & Sons, Inc.,* 387 Pa.Super. 95, 563 A.2d 1201 (1989).

¶ 3 Paves testified that, upon her arrival at Carol Corson's house, she was immediately admitted to Chestnut Hill Hospital by Barry Corson, who had admitting privileges there, and began taking various medications that he prescribed for her. While in the hospital, she signed a will drafted by Barry Corson's neighbor and friend Stewart Liebman, Esquire, in which she left her entire estate to her children Barry and Carol. At that time, Paves also signed a power of attorney in favor of Barry Corson, although she testified she was told it was merely a second copy of the will.

¶ 4 Upon her release from the hospital, Paves and Barry Corson left for Florida, where Barry Corson used the power of attorney to close out all of Paves's remaining accounts. Barry Corson then took control of these funds, giving gifts to various family members, including Carol Corson and himself, and lending money without Paves's permission to persons unknown to her. Over the course of this period, over $600,000 flowed out of Paves's accounts, as gifts, or into other unidentified accounts. Also, Paves testified that real estate, jewelry and other items of personal property she owned were sold by appellants, and the proceeds kept by them. In 1991, when Paves finally confronted her children about these matters, she was ejected from Carol Corson's home, where she had been residing.

¶ 5 In 1993, Paves filed suit against appellants asserting claims for conversion, intentional infliction of emotional distress, negligent infliction of emotional distress, civil assault, battery, breach of fiduciary relationship, breach of confidential relationship, undue influence, equitable claims for constructive trust, and medical negligence. Paves withdrew the claims for constructive trust and medical malpractice prior to trial. After trial and upon motion for directed verdict, the trial court dismissed the claim of battery against Carol Corson, and the claims of negligent inflic-

tion of emotional distress and civil assault against both appellants.

¶ 6 The remainder of the case was submitted to the jury, and the jury rendered the following verdict:

*Against Dr. Barry Corson:*

| | |
|---|---|
| Battery | $600,000. |
| Intentional Infliction of Emotional Distress | 900,000. |
| Breach of Fiduciary Duty | 375,916. |
| Breach of Confidential Relationship | 106,354. |
| Punitive Damages | 1,000,000. |
| Conversion | 41,000. |

*Against Carol Corson:*

| | |
|---|---|
| Breach of Confidential Relationship | $150,000. |
| Intentional Infliction of Emotional Distress | 500,000. |
| Punitive Damages | 400,000. |
| Conversion | 59,500. |

¶ 7 In this appeal, appellants question whether the trial court: 1) erred in allowing the battery claim against Barry Corson to go to the jury; 2) erred in allowing the claims for intentional infliction of emotional distress to go to the jury in the absence of medical testimony to support the claims; 3) erred in allowing the conversion claims to go to the jury; 4) erred in allowing Paves to testify that she was "drugged," "confused," and had other alleged effects of medications prescribed by Barry Corson; 5) erred in failing to strike the testimony of Paves's purported forensic accounting expert, and failing to grant a new trial because of his testimony; 6) erred in giving an "adverse inference" instruction against the appellants for their failure to produce certain documents; 7) erred in giving fraud and undue influence charges to the jury; 8) erred in failing to grant a remittitur on the verdict; 9) erred in allowing punitive damages on the claims of battery, conversion and intentional infliction of emotional distress. Appellants also assert that the trial court properly dismissed the additional claims of assault and negligent infliction of emotional distress. Paves cross-appealed to challenge the trial judge's grant of a directed verdict on these

dismissed claims. We address each issue below.[2]

### BATTERY

¶ 8 The trial court allowed this claim to go to the jury, and the jury found in favor of Paves. Battery is defined at law as a harmful or offensive contact. *Levenson v. Souser*, 384 Pa.Super. 132, 557 A.2d 1081 (1989). Here, Paves claims that Barry Corson committed a battery when he prescribed various drugs for her, and that this act was the "offensive contact." We find no basis in our law for this claim. *See, e.g., Wu v. Spence*, 413 Pa.Super. 352, 605 A.2d 395 (1992) (administration of drug, even intravenously, did not constitute "touching" or technical battery for informed consent purposes); *Levenson v. Souser*, supra at 1086 (citing *Malloy v. Shanahan*, 280 Pa.Super. 440, 421 A.2d 803, 805 (1980) (Hoffman, J., dissenting)) (prescription of drug without physical administration thereof is not a "battery").

¶ 9 In fact, this court has been unwilling to view a defendant's act of supplying alcohol to another person as an act of battery. *Herr v. Booten*, 398 Pa.Super. 166, 580 A.2d 1115, 1117 (1990). The notion of battery includes an act " 'which impinges upon that individual's sense of physical dignity or inviolability,' such as occurs when a defendant 'throws a substance, such as water, upon the [plaintiff] or if the [defendant] sets a dog upon him,' even though the defendant and the plaintiff have not physically touched each other." *Id.* (quoting from Restatement (Sec-

ond) of Torts § 18, comment c). However, supplying alcohol to a minor or visibly intoxicated person, although improper and contrary to the law, is not a battery. *Id.* We have found no case that allows recovery for battery based on the prescription of medication to a patient.[3]

¶ 10 Paves asserted an alternate theory of recovery for battery, which is also without merit. She claimed that Barry Corson ordered an unnecessary gynecological examination by another doctor, and Paves underwent that examination against her will. However, Paves permitted the examination to take place. Moreover, Barry Corson himself did not perform the examination, and therefore did not make the required contact.[4] Finally, the gynecological examination took place in 1986 and suit wasn't filed until 1993, well beyond the relevant statute of limitations. 42 Pa.C.S. § 5524. For all of these reasons, the trial judge erred in submitting the claim of battery to the jury, and we vacate the award against Barry Corson on this claim.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶ 11 The jury found in favor of Paves on her claim of intentional infliction of emotional distress. Appellants argue that Paves did not make out this claim because she failed to present expert medical testimony at trial. The tort of intentional infliction of emotional distress, if it

---

2. Appellants do not challenge the jury's verdict on the claims of breach of fiduciary duty and breach of confidential relationship.

3. Moreover, Paves voluntarily took the drugs prescribed, despite her claimed objection to doing so. Although Paves claimed she feared Barry Corson's threats that she would become ill if she did not continue to take the drugs, a plaintiff may recover for battery only if she did not consent to the touching. *Levenson, supra* at 1088.

4. Paves argues that the gynecologist who performed the examination acted as Barry Cor-

son's agent for purposes of committing the battery. "Masters have frequently been held answerable for the assaults of their servants committed within the scope of their employment." *Pilipovich v. Pittsburgh Coal Co.*, 314 Pa. 585, 172 A. 136 (1934) (defendant railroad could be held liable for actions of its police officer acting within the course of his employment). However, the gynecologist was not Barry Corson's "servant" or in his employ, and we have found no case law which would permit recovery for battery under these facts. The trial judge did not even submit this agency theory to the jury.

exists in this Commonwealth,[5] has been described in Restatement (Second) of Torts § 46(1):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988, 991 (1987). The defendant's conduct as envisioned by the Restatement is such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (citing Restatement § 46(1), comment d).

¶ 12 Even where a defendant's conduct is outrageous, however, a plaintiff still must prove through expert medical testimony that she actually suffered the claimed distress. *Kazatsky, supra* at 196, 527 A.2d at 995. "Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries." *Id.* Where no such testimony is presented, and where the record reflects that the plaintiffs did not seek medical assistance as a result of the alleged tortious conduct, there can be no recovery for intentional infliction of emotional distress. *Id.* *See also Hackney v. Woodring,* 539 Pa. 266, 652 A.2d 291 (1994) (reversing Superior Court's holding that expert medical testimony was not required to show intentional infliction of emotional distress).

¶ 13 Paves argues that sufficient medical evidence was presented through the testimony of Barry Corson himself. He testified that Paves suffered from anxiety and depression, and that is why he prescribed medications for her. However, even assuming *arguendo* that Barry Corson's testimony was sufficient to prove injury, Paves still had to prove the element of causation. Barry Corson did not testify that his actions, and those of his sister, *caused* his mother's anxiety and depression. It is this causal link that is missing from the case, and the absence of such testimony is fatal to a claim of intentional infliction of emotional distress. We therefore hold that the trial judge erred in submitting this claim to the jury, and vacate the jury's award against appellants.

## CONVERSION

¶ 14 The jury found in favor of Paves on her conversion claim, awarding her damages against both Barry Corson ($41,000) and Carol Corson ($59,900). "Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Brinich v. Jencka,* 757 A.2d 388, 403 (Pa.Super.2000) (quoting from *Shonberger v. Oswell,* 365 Pa.Super. 481, 530 A.2d 112, 114 (1987)).

¶ 15 Appellants first argue that this claim was barred by the two year statute of limitations for conversion. 42 Pa.C.S. § 5524. We disagree. The trial court properly deemed this affirmative defense to have been waived. Although it was raised in the pleadings, it was not raised again at any time prior to the motion for directed verdict. No evidence was presented on this issue by appellants, and therefore no opportunity for rebuttal by Paves on the discovery rule was allowed. We find no error in the trial judge's decision that the statute of limitations did not

---

5. *See Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 753 n. 10 (1998) (the tort of intentional infliction of emotional distress as described in the Restatement has never been expressly adopted by our Supreme Court). *But see Field v. Philadelphia Electric Co.,* 388 Pa.Super. 400, 565 A.2d 1170, 1184 (1989) (Superior Court panel recognized viability of tort of intentional infliction of emotional distress); *Bartanus v. Lis,* 332 Pa.Super. 48, 480 A.2d 1178, 1184 (1984) (same).

bar the conversion claim.[6]

¶ 16 Appellants argue that Paves did not adequately prove the value of the converted funds and property, and so cannot recover on this claim. Although the measure of damages for conversion is the market value of the converted property at the time and place of conversion, such a value is often unascertainable. *Lynch v. Bridges & Co.*, 451 Pa.Super. 92, 678 A.2d 414 (1996); *Pikunse v. Kopchinski*, 429 Pa.Super. 46, 631 A.2d 1049 (1993) However, mere uncertainty as to the amount of damages will not bar recovery where it is clear that the damages were the certain result of the defendant's conduct. *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983), *superseded on other grounds as stated in Boland v. Nationwide Mut. Ins. Co.*, 9 Pa.D. & C.4th 27 (C.P. Blair Cty.1991). "Generally, under Pennsylvania law, damages need not be proved if an intelligent estimate is arrived at without conjecture." *Delahanty, supra.* It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss. *Id.* It is the traditional function of the fact-finder in conversion actions to estimate damages. *Pikunse, supra* at 1051.

¶ 17 In *Pikunse, supra,* where defendant landlords threw out the plaintiff's personal property so that its fair market value could not be assessed, the plaintiff's own list of items taken, and their worth, as estimated by plaintiff, based on the price she paid for each, afforded the fact finder reasonable basis upon which to calculate the loss; it was the defendants' burden to rebut that evidence. *Id.* at 1052. In this case, the record readily demonstrates that Paves presented a reasonable basis on which the jury could calculate the value of the converted property, and the court did not err in submitting the matter to the jury. However, as explained further *infra,* we must remand for a recalculation of damages.

### ADMISSIBILITY OF EVIDENCE

*Testimony by Paves on Effects of Medication.*

¶ 18 Appellants also claim that the trial court erred in allowing Paves to testify about being "drugged" and "confused" as a result of medication prescribed by Barry Corson. When it became clear that Paves would not be presenting medical testimony, the court ruled that Paves—a layperson—was not to testify regarding the alleged effects of medication she took as a result of Barry Corson's prescriptions.[7] However, despite frequent admoni-

6. Even if we were to consider the statute of limitations defense, appellants would not prevail on this issue. The record is unclear as to when the alleged conversion took place. There was testimony regarding missing funds going back as far as 1986, the first year Paves arrived from Florida. Suit was filed in 1993. However, Paves counters that the discovery rule applies. The party seeking to invoke the discovery rule in order to toll the statute of limitations bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167 (1997). It applies only to situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury. *Id.* at 228, 701 A.2d at 170. It is applicable in only the most limited of circumstances, where the plaintiff, despite the exercise of reasonable diligence, was unable

to discover his or her injury or its cause. *Id.* at 230, 701 A.2d at 171. Our review of the record reveals that Paves presented evidence that appellants hid information about her finances sufficient to toll the statute of limitations. Under these circumstances, we would not find the statute of limitations to be a bar to her claim of conversion.

7. There was limited testimony from Barry Corson regarding the potential side effects of one of the drugs prescribed. He confirmed that Haldol can cause hand-shaking, a symptom about which Paves complained. N.T. 7/8/99, p. 78. However, this particular evidence was irrelevant to Paves's claims that she was "confused." There was no medical evidence to prove her allegation that appellants kept her drugged so they could steal her money.

tions by the court on this issue, Paves continually made reference to her "feelings" when she took the prescribed drugs. Objections posed to such testimony were always sustained and the testimony stricken. The trial court's rulings that precluded such evidence in the absence of expert medical testimony were correct. *See Smith v. German,* 434 Pa. 47, 253 A.2d 107 (1969) (where there is no obvious causal relationship between an injury and its claimed consequences, unequivocal medical testimony is necessary to establish the causal connection).

¶ 19 However, to the extent such testimony came into evidence without objection, complaint about its admission is waived. We note that the trial court did charge the jury regarding the limited value of testimony by Paves on her "feelings" without corresponding medical causation evidence. After our careful review of the record, we find no reversible error on this issue, particularly since we vacate the awards for battery and intentional infliction of emotional distress, the two claims to which this evidence was most relevant.

*Testimony by Forensic Accounting Expert.*

■ ¶ 20 Appellants argue that Paves presented improper testimony from her "forensic accounting" expert. Charles P. Fullam testified regarding his review of the bank statements and other financial documents relating to Paves's accounts. He did not give an opinion, but rather described the transactions memorialized by these statements, and testified about the total amount—over $600,000—that had been removed. Cross-examination by appellants was thorough and rigorous, and ultimately, Mr. Fullam admitted that many transactions he had described as "unauthorized" could have been gifts that Paves admitted giving. The bias in Fullam's analysis was evident, but that did not make his testimony inadmissible. Moreover, appellants' counsel was "satisfied" with a jury instruction given by the court regarding the limited value of Fullam's

testimony. We find no error in the admission of Fullam's testimony.

## JURY INSTRUCTIONS
### Adverse Inference Charge.

■ ¶ 21 Appellants argue that the trial judge improperly charged the jury that they could draw an adverse inference from appellants' failure to produce certain financial documentation that would have supported their defense. Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation he fails to do so, the jury may draw an inference that the missing evidence would have been unfavorable to him. *Haas v. Kasnot,* 371 Pa. 580, 585, 92 A.2d 171 (1952); Pa. Suggested Standard Jury Instructions (Civil) 5.06. It is clear that in this case Barry Corson was in control of all of his mother's financial matters, and all documentation related to them. Under such circumstances, an adverse inference charge was proper.

¶ 22 Appellants alternatively argue that if an adverse inference charge was proper against appellants with respect to the missing bank statements, a similar charge regarding other documentation in Paves's control should have been given. However, Paves testified that appellants took possession of all her documents and those documents were never returned to her. We find no error in the court's decision not to give an adverse inference charge against Paves under these circumstances.

### Charge on Undue Influence and Fraud.

■ ¶ 23 Appellants argue that undue influence and fraud should not have been submitted to the jury as these claims were not properly pleaded in the complaint and the court erred in charging on them. A cursory review of the complaint, however, belies this argument. Moreover, any objection to the specificity of the complaint should have been raised in preliminary objections. Pa.R.Civ.P. 1028(b). Finally, to the extent the elements of fraud and

undue influence were not included in the complaint under a specific "heading," the trial court properly allowed amendment to conform to evidence presented during trial. *Capobianchi v. BIC Corp.*, 446 Pa.Super. 130, 666 A.2d 344 (1995); *General Machine Corp. v. Feldman*, 352 Pa.Super. 180, 507 A.2d 831 (1986). The complaint provided sufficient notice of what Paves planned to prove at trial, and appellants could not have been prejudiced by the court's charge on fraud and undue influence under the facts of this case.

## PUNITIVE DAMAGES

¶ 24 Punitive damages must be based on conduct which is malicious, wanton, reckless, willful, or oppressive. *Shiner v. Moriarty*, 706 A.2d 1228, 1239 (Pa.Super.1998). Punitive damages are meant to punish a tortfeasor for outrageous conduct; therefore, the award need not bear a proportional relationship to the amount of compensatory damages awarded. *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800, 803 (1989).

¶ 25 A punitive damages award cannot stand and a new trial on damages is necessary where some of the underlying causes of action on which the compensatory damage awards were based did not survive appeal. *Shiner v. Moriarty, supra* at 1242. *See also Houston v. Texaco, Inc.*, 371 Pa.Super. 399, 538 A.2d 502, 505 (1988) (punitive damages cannot be recovered in the absence of a legally recognized injury). Where punitive damages were assessed in the case without regard to a specific cause of action, it is impossible to determine which portion of the award was attributable to the emotional distress and battery claims that we hold were not properly established. *See Shiner, supra* at 1242. Therefore, a new trial on the issue of compensatory and punitive damages for conversion, and the other surviving causes of action—breach of confidential relationship and breach of fiduciary duty—is necessary. *Id.*

## REMITTITUR

¶ 26 Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant, when it shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. *Haines v. Raven Arms*, 536 Pa. 452, 640 A.2d 367, 369 (1994). A jury is given wide latitude to fashion a verdict on damages. *Neison v. Hines*, 539 Pa. 516, 653 A.2d 634 (1995). The large size of a verdict by itself is not evidence of excessiveness. *Layman v. Doernte*, 405 Pa. 355, 175 A.2d 530 (1961). Although our review of the record reveals that the trial court did not err in refusing a remittitur in this case, we note that the matter is now moot, as we remand for a recalculation of damages on the surviving claims in this case.

## ALTERNATE THEORIES OF RECOVERY

*Negligent Infliction of Emotional Distress.*

¶ 27 Paves asserts that, if any of the claims on which she recovered below are rejected in this appeal, we must review the trial court's dismissal of her claims of negligent infliction of emotional distress and assault. We find no error in the trial judge's grant of a directed verdict on these claims.[8]

¶ 28 We note that the very existence in this Commonwealth of an independent tort of negligent infliction of emotional distress is not at all clear.[9]

---

8. When reviewing trial court's decision to enter judgment n.o.v. or directed verdict we must consider the evidence in the light most favorable to the verdict winner to determine if there is a right to relief. *Walker v. Grand*

*Central Sanitation, Inc.*, 430 Pa.Super. 236, 634 A.2d 237, 240 (1993).

9. There is considerable confusion in this area of the law, and our cases are not always reconcilable. *See Armstrong v. Paoli Memori-*

However, assuming such an action exists, Paves has not established it here. Paves claims that Barry Corson's prescription of drugs and ordering an unnecessary gynecological examination constituted a negligent infliction of emotional distress. A cause of action for negligent infliction of emotional distress may be maintained under either the physical impact or bystander rules. *Long v. Yingling*, 700 A.2d 508, 516 (Pa.Super.1997). We fail to see how the "bystander rule" could be implicated here.[10] Under the "impact rule" of recovery, a plaintiff may recover damages for mental suffering where she "sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed [her]." *Id.*

¶ 29 In this case, Paves did not present any expert testimony that Dr. Corson was negligent *i.e.*, that his medical treatment failed to meet the relevant standard of care. In fact, Paves withdrew her original claim of medical malpractice against Corson. Therefore, Paves did not prove the negligence element of this tort, and cannot prevail.[11] The trial court did not err in granting directed verdict on the claim of negligent infliction of emotional distress.

*al Hosp.*, 430 Pa.Super. 36, 633 A.2d 605 (1993) (collecting cases and discussing conflicts).

**10.** The bystander rule allows recovery for negligent infliction of emotional distress where the plaintiff personally observes a physical injury being inflicted by another upon a third person. *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). Recovery depends on an analysis of three factors: 1) whether the plaintiff was located near the scene of the accident; 2) whether the plaintiff experienced a sensory and contemporaneous observation of the accident; and 3) whether the plaintiff and the victim were closely related. *Brown v. Philadelphia College*, 449 Pa.Super. 667, 674 A.2d 1130, 1133 (1996).

**11.** Moreover, even if Dr. Corson's actions of prescribing medications and ordering a gynecological exam (or even mismanaging the financial accounts) could be considered the

*Assault.*

■ ¶ 30 Finally, we consider the claim of assault, also dismissed by the trial judge. An assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact. *Sides v. Cleland*, 436 Pa.Super. 618, 648 A.2d 793, 796 (1994) (citing Restatement (Second) of Torts § 21). Threatening words alone are insufficient to put a person in reasonable apprehension of physical injury or offensive touching; rather the actor must be in a position to carry out the threat immediately and must take some affirmative action to do so. *General Machine Corp. v. Feldman, supra* at 833–34 (Pa.Super.1986) (quoting from *Cucinotti v. Ortmann*, 399 Pa. 26, 159 A.2d 216 (1960)). Paves makes the vague argument that she was assaulted when she was made to undergo an unwanted gynecological examination, and when she was forced to take medications that were offensive to her and that she believed would make her dependent. For the same reasons these events were insufficient to support the battery claim, they cannot be the basis for the assault claim. Paves has presented us with no authority, nor have we found any, to support her claim under these facts.

negligent conduct required by this cause of action, Paves has failed to produce expert medical testimony to establish the causation element, and as with her claim of intentional infliction of emotional distress, this failure of evidence is fatal to her claim. *See Sinn v. Burd, supra* at 154, 404 A.2d at 676 (damages for emotional distress may be recovered because medical science can "prove a causal nexus between the claimed damages and the alleged fright or mental distress"). *Compare Brown v. Philadelphia College*, 449 Pa.Super. 667, 674 A.2d 1130, 1137 (1996) (plaintiff met her burden of proving emotional distress with psychiatric report). *Cf. Krysmalski v. Tarasovich*, 424 Pa.Super. 121, 622 A.2d 298, 305 (1993) (no medical evidence was necessary to make out *bystander* claim for negligent infliction of emotional distress). We further note the gynecological examination took place in 1986, and suit was not filed until after the two year statute of limitations expired; this basis for recovery fails. 42 Pa.C.S. § 5524.

We find no error in the trial court's decision to dismiss the assault claim.

*CONCLUSION*

¶ 31 We hold the conversion claim was properly submitted to the jury. We further hold the trial court erred in submitting the claims for battery and intentional infliction of emotional distress to the jury, and therefore vacate the awards entered on these claims. The punitive damages award must also be vacated, as it could have been based in part on the claims of intentional infliction of emotional distress or battery, which we have overturned. We must remand for a new trial limited to damages only on the surviving claims: conversion, breach of fiduciary duty, breach of confidential relationship, and punitive damages.

¶ 32 Affirmed in part; reversed and remanded in part. Jurisdiction relinquished.