Maryfrances CASSELL, Appellant,

v.

LANCASTER MENNONITE CONFERENCE, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 14, 2003.
Filed Oct. 17, 2003.

David S. Dessen, Philadelphia, for appellant.

Vivian B. Narehood, Lancaster, for appellee.

BEFORE: STEVENS, GRACI, and OLSZEWSKI, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered by the Court of Common Pleas of Lancaster County granting summary judgment in favor of defendant/Appellee Lancaster Mennonite Conference (The Conference), after the court excluded plaintiff/Appellant Maryfrances Cassell's (Cassell) medical expert witness after a *Frye*[1] hearing. For the following reasons, we reverse and remand.

¶ 2 This Court's memorandum decision, *Cassell v. Lancaster Mennonite Confer-*

---

**1.** *Frye v. United States,* 54 App.D.C. 46, 293 F.    1013 (D.C.Cir.1923).

*ence,* No. 3084 Philadelphia 1995, 454 Pa.Super. 675, 685 A.2d 205, unpublished memorandum (Pa.Super. Filed July 17, 1996), aptly summarizes the earlier factual history of this case:

[Maryfrances] Cassell, who is a Christian Scientist, operated the A. Arlene Miller Studio of Pianoforte in Mount Joy, Pennsylvania, in conjunction with A. Arlene Miller, a Mennonite, from 1964 to 1980. Miller resided with Cassell while the studio was in operation. The personal relationship between Cassell and Miller ended at the same time their business association ended. Cassell alleges that at that time the Conference decided to force Cassell to leave Mount Joy. She also alleges that members of the Conference, in furtherance of this intention, removed certain items of Cassell's personal property from her home, demanded that Cassell pay Miller an unspecified sum of money, and demanded that Cassell leave the area.

Cassell alleges various other related incidents involving the Conference, including a 1985 public presentation of anti-Christian Science views and the mailing of an allegedly defamatory letter, in February 1992, to Cassell's church in Boston, Massachusetts. [In 1988, Cassell and the minister of the Mount Joy Mennonite Church executed a document containing retractions of statements in the allegedly defamatory letter. A separate "Statement of Retractions" signed by a Mennonite District Bishop was witnessed by Cassell].

This case was initiated by writ of summons on May 26, 1989 . . . . [After this Court reversed an order dismissing Cassell's eventual *pro se* complaint and remanded to permit Cassell to obtain legal counsel to file a subsequent Complaint], Cassell filed her Third Amended Complaint on January 28, 1994, with the assistance of counsel. This complaint sought relief from the Conference for the following: [alleged breach of contract, defamation], and intentional infliction of emotional distress upon Cassell by the Conference and its agents. [The trial court, however, sustained the Conference's demurrer to the contract counts and struck the remaining counts of the complaint. On appeal, we affirmed the order of the trial court with the exception of its striking Cassell's count of intentional infliction of emotional distress, which, we held, contained allegations sufficient to make out her cause of action. We thus reversed and remanded to allow Cassell to advance her emotional distress claim].

*Cassell, supra* at 1–3.

¶ 3 Four years passed with little activity on the docket, and the trial court listed the case for a termination hearing. Cassell's counsel, however, avoided termination of the case by listing it as ready for trial. On May 2, 2001, the trial court conducted a pre-trial conference and afterwards entered a Certification Order scheduling trial for December 10, 2001 and directing any motions *in limine* to be filed no later than sixty days before the scheduled trial date. On May 3, 2001, The Conference filed a Motion for Summary Judgment, which the trial court denied on June 12, 2001.

¶ 4 Five days before the scheduled trial date, the parties took the videotape trial testimony of Cassell's proposed expert witness, licensed psychologist Dr. Margaret Kay, whose "adjustment disorder"[2] diagnosis of Cassell is the basis for Cassell's claimed emotional distress. The next day,

---

2. According to the evidence, an "adjustment disorder" is an abnormal or maladaptive reaction to an identified stressor proximate in time, and which may cause personal distress and/or inhibit social, occupational, or academic functioning.

The Conference filed a "Motion to Exclude Expert Testimony of Dr. Margaret Kay on *Frye/Daubert* Standard." The trial court continued the trial from December 10, 2001 because of a scheduling conflict and issued a second Certification Order setting March 18, 2002 as the new trial date and establishing a new deadline, sixty days before trial, for any motions *in limine*. On January 16, 2002, The Conference incorporated its *Frye* challenge to Dr. Kay's testimony into a comprehensive motion *in limine*. Cassell filed an answer and brief opposing the motion as untimely filed and without merit.

¶ 5 The trial court conducted an evidentiary hearing on March 19, 2002, at which Dr. Kay and defense expert psychiatrist Dr. James Morrison, M.D. gave differing testimonies about the proper methodology for diagnosing an "adjustment disorder." Both practitioners cited the Diagnostic and Statistical Manual IV ("DSM"), published by the American Psychiatric Association, as the preeminent treatise on diagnosing mental disorders, but they disagreed on how to use the DSM to reach diagnosis. Specifically, Dr. Kay relied on DSM language allowing for a methodology using more subjective discretion in making a diagnosis, while Dr. Morrison would rely on the objective criteria-based methodology also specified in the DSM. At the conclusion of testimony and argument, the trial court entered an order excluding the testimony of Dr. Kay for its failure to reflect a scientific method and practice generally accepted in the field of psychology. With no expert to support Cassell's claim, the trial court then entered an order granting The Conference's oral motion for summary judgment. This appeal followed.

■■■■ ¶ 6 Cassell raises three issues for our review:

   I.   DID THE LOWER COURT ERR IN CONDUCTING A HEARING ON THE ADMISSIBILITY OF APPELLANT'S EXPERT WITNESS WHERE THE DEFENDANT HAD NOT FILED A TIMELY MOTION IN LIMINE?

   II.   DID THE LOWER COURT ERR IN EXCLUDING THE EXPERT TESTIMONY OF APPELLANT'S EXPERT WITNESS, DR. MARGARET J. KAY, PURSUANT TO FRYE V. UNITED STATES...?

   III.   DID THE LOWER COURT ERR IN GRANTING THE DEFENDANT'S COMPREHENSIVE MOTION IN LIMINE?

Brief for Appellant at 4.

Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Stanton v. Lackawanna Energy, Ltd.*, 820 A.2d 1256, 1259 (Pa.Super.2003).

■■■■ ¶ 7 Cassell contends first that the court erred in conducting a *Frye* hearing when The Conference never challenged the admissibility of Dr. Kay's testimony in a

motion *in limine* filed under the first Certification order. Yet, the record is clear that the trial court postponed the original trial date and entered a corresponding second Certification order setting a new deadline for motions *in limine*. Cassell never objected to the court's order, and offers no authority or persuasive reason to prohibit the filing of motions under a new deadline well in advance of trial. Accordingly, we find no error with the trial court's conducting the March 18, 2002 evidentiary hearing on The Conference's motion *in limine* and the *Frye* challenge therein incorporated.

¶ 8 Cassell next argues that the court erred when it excluded under *Frye* her expert testimony regarding her alleged condition of emotional distress.[3] As we have recently held:

> The *Frye* test sets forth an exclusionary rule of evidence that applies only when a party wishes to introduce novel scientific evidence obtained from the conclusions of an expert scientific witness. Under *Frye*, a party wishing to introduce such evidence must demonstrate to the trial court that the relevant scientific community has reached general acceptance of the principles and methodology employed by the expert witness before the trial court will allow the expert witness to testify regarding his conclusions.

However, the conclusions reached by the expert witness from generally accepted principles and methodologies need not also be generally accepted. Thus, a court's inquiry into whether a particular scientific process is "generally accepted" is an effort to ensure that the result of the scientific process, i.e., the proffered evidence, stems from "scientific research which has been conducted in a fashion that is generally recognized as being sound, and is not the fanciful creations [sic] of a renegade researcher."

*M.C.M. v. Milton S. Hershey Med. Ctr. of the Pa. State Univ.*, 834 A.2d 1155, 1158, 2003 WL 22119589 (Pa.Super.2003) (citations omitted) (quotation marks omitted).

■ ¶ 9 Here, the trial court determined that Dr. Kay reached her "adjustment disorder" diagnosis of Cassell through a methodology not generally accepted in the medical community, and cited two findings to support this determination. First, Dr. Kay obtained information on the relevant underlying events solely from Cassell during a clinical interview, without further consulting collateral sources. Second, Dr. Kay opted against using objective, "axial" standards for diagnosing an "adjustment disorder" that are provided in the DSM.[4] Instead, Dr. Kay

---

3. Expert medical testimony is necessary to establish that a plaintiff actually suffered the claimed emotional distress. *See Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987); *Paves v. Corson*, 765 A.2d 1128, 1134 (Pa.Super.2000), rev'd on other grounds, 569 Pa. 171, 801 A.2d 546 (2002).

4. An "Adjustment Disorder" is a DSM Axis I mental disorder. To diagnose a patient with this disorder under the axis method, five criteria must be satisfied:

    A. The development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within three months of the onset of the stressor(s).

    B. These symptoms or behaviors are clinically significant as evidenced by either of the following:
    (1) marked distress that is in excess of what would be expected from exposure to the stressor(s).
    (2) significant impairment in social or occupational (academic) functioning.

    C. The stress-related disturbance does not meet the criteria for another specific Axis I disorder and is not merely an exacerbation of a preexisting Axis I or Axis II disorder.

    D. The symptoms do not represent bereavement.

    E. Once the stressor or its consequences has terminated, the symptoms do not

relied on apparent language in the DSM preamble that gives mental health professionals the option of diagnosing without use of the axial standard. In that vein, Dr. Kay simply relied on her professional experience to assess and, ultimately, diagnose Cassell's reactions to the events that she had reported.

¶ 10 The evidence supplied by both parties at the *Frye* hearing acknowledges that, depending on the circumstances, a clinical interview alone may represent a generally accepted methodology to producing an accurate diagnosis. See N.T. 3/19/2002 at 6, 81, 91. To the extent that the trial court's opinion tends to foreclose this possibility as a matter of law, we must reject it. Moreover, the hearing established that the interview employed by Dr. Kay followed a prescribed form, and was not simply a freelance, subjective process unrecognized in the mental health field. Therefore, we find that the interview tracked generally accepted methods under our standard of review.

¶ 11 Moreover, we disagree with the trial court that Dr. Kay's "non-axial" methodology in this case failed to meet generally accepted standards for diagnosing an adjustment disorder. The record shows that the axial method, which specifically delineates five criteria requisite to an adjustment disorder, does not represent the only generally accepted methodology for reaching diagnosis. Indeed, Dr. Kay adequately supported this position when she read the following excerpt from the DSM:

> Clinicians who do not wish to use the multiaxial format may simply list the appropriate diagnoses. Those choosing this option should follow the general rule of recording as many coexisting mental disorders, general medical conditions, and other factors as are relevant to the

persist for more than an additional six

care and treatment of the individual. The principal diagnosis or the reason for the visit should be listed first.

N.T. 3/19/2002 at 20. The DSM thus appears to permit mental health practitioners the discretion to diagnose outside of the specified strictures of the axial methodology, provided they also record all other factors and conditions pertinent to a particular case.

¶ 12 The record shows that Dr. Kay followed this "non-axial" methodology in making the diagnosis at issue. It thus appears sufficient that Dr. Kay relied on her professional experience to assess Cassell's reactions to events reported in a properly structured clinical interview, and then to determine those reactions were so maladaptive as to constitute an "adjustment disorder." Therefore, we find Dr. Kay's methodology is generally recognized as sound, and not the "fanciful creation of a renegade researcher."

¶ 13 We stress that our inquiry does not go to the persuasiveness of Dr. Kay's conclusions; it goes only to whether her methodology enjoys general recognition in her field. Under the DSM's own language, it appears that it does. Nor does the *Frye* standard even require an optimal methodology, just an accepted one. It is for a jury, and not the trial court, to attach weight to a diagnosis which is based largely on Cassell's own description of her ongoing relationship with The Conference, and which deviates in part from the more objective, criteria-driven axial methodology.

¶ 14 Finally, we agree with Cassell that the record before us on the order granting The Conference's comprehensive motion in limine, in so far as it also requested exclusion of seven other documents on grounds of hearsay and irrelevance, is inadequate

months.

to permit meaningful appellate review. Accordingly, we vacate that order and remand for a hearing as to the exclusion of such proffered evidence.

¶ 15 For the foregoing reasons, we reverse and remand.

¶ 16 Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.